**CONTINENTAL GIN CO. v. TATUM et al.**
No. 3126.

Court of Civil Appeals of Texas. El Paso.
Jan. 24, 1935.

Rehearing Denied Feb. 14, 1935.

Coke & Coke and Thos. G. Murnane, all of Dallas, for appellant.

Bishop & Holland, of Athens, for appellees.

HIGGINS, Justice.

On January 7, 1925, G. R. Tatum, a colored man, died intestate, leaving as his surviving heirs his wife, Sarah J. Tatum, an adult son, C. S. Tatum, and a granddaughter about 9 years old.

On January 28, 1925, the surviving wife was appointed and qualified as the survivor of the community estate under the statute (Vernon's Ann. Civ. St. art. 3678).

The community estate, as shown by the inventory, consisted of eight tracts of land containing 710 acres, $1,665 in bank, a cotton gin, a stock of merchandise valued at $125, various chattels valued at more than $1,000, open accounts against various parties amounting to $1,500 and valued at $500. The deceased owed no debts.

The gin was upon the home place a short distance from the residence.

Immediately after the death of his father, C. S. Tatum, with his wife, moved to the home of the deceased, where he and his wife have since lived with his mother and niece.

The mother intrusted to her son the management of the estate and her business. They continued to operate the gin apparently as partners under the name of Tatum & Tatum.

In the spring of 1926 the mother and son bought two gin stands, a condensor, and other appliances from the Continental Gin Company, to replace machinery in the gin which had become worn.

A part of the purchase price was paid in cash, and to cover the balance two interest-bearing notes were individually executed by the mother and son, for the sum of $1,060 each, dated June 28, 1926, due December 1, 1926, and December 1, 1927, respectively. To secure the payment of the notes, they executed a mortgage upon the chattels purchased and a deed of trust upon property described as follows: "Part of the G. R. Tatum Homestead, about nine miles northeast from the Town of LaRue, situate in the Hightower Survey, together with all gin houses, buildings, machinery, and improvements now and hereafter to be located upon the above-described gin lot."

The deed of trust and chattel mortgage were of even date with the notes.

On April 23, 1931, Sarah J. and C. S. Tatum executed a renewal of the two notes, upon which some payments had been made, and extended the maturity thereof to October 1, 1931. At the same time they executed a deed of trust upon said eight tracts of land to J. S. McAnnlly, trustee, to secure the payment of the notes.

On June 10, 1932, the gin company foreclosed the chattel mortgage, becoming the purchaser at the foreclosure sale. In July, 1933, the company took possession of the chattels and delivered same to a purchaser thereof.

Later Sarah J. Tatum, for herself and as next friend of her granddaughter, joined by C. S. Tatum and wife, brought this suit against the gin company and others not necessary to mention to cancel the last-mentioned deed of trust and to remove the same as a cloud upon the title to the land.

It was alleged that Sarah J. and C. S. Tatum were induced to execute the instruments of April 23, 1931, by false and fraudulent representations that said instruments were only renewals and extensions of the notes previously executed; that the deed of trust was executed by them without knowing that it purported to create a lien on said lands.

The plaintiffs also set up a claim for damages arising out of alleged wrongful conversion of the chattels which had been removed from the gin after foreclosure as above stated.

The gin company answered and set up a cross-action seeking judgment for its debt and foreclosure of the two deeds of trust held by it.

Findings made by the jury are as follows:

(1) At the time of the execution of the deed of trust of date April 23, 1931, John A. Pope represented to Sarah Jane Tatum, Sr.,

that same was only a renewal and extension of the note formerly executed by her.

(2) Sarah Jane Tatum, Sr., relied on such representation in the execution of said deed of trust.

(3) The deed of trust of date April 23, 1931, was executed without knowledge on the part of Sarah Jane Tatum, Sr., that same purported to create a lien on the lands described therein.

(4) At the time of the execution of the deed of trust of date April 23, 1931, John A. Pope, represented to C. S. Tatum, that same was only a renewal and extension of the note formerly executed by him.

(5) C. S. Tatum relied on such representation in the execution of said deed of trust.

(6) The deed of trust of date April 23, 1931, was executed without knowledge on the part of C. S. Tatum that same purported to create a lien on the lands described therein.

(7) The reasonable market value of the property taken from plaintiff's premises by defendant was $1,200.

Judgment was rendered in favor of the plaintiff canceling the deed of trust of April 23, 1931, and removing the cloud cast by the same on the title of the plaintiffs to the land described in said deed of trust.

Judgment was also rendered in favor of the gin company for the balance due on the notes described in its cross-action. The seventh finding and claim for damages was disregarded in the judgment rendered.

The judgment denied any recovery by the gin company against the said Sarah J. Tatum, Sr., in her capacity as community survivor, and also denied the foreclosure of any lien sought to be foreclosed.

From such judgment the gin company prosecutes this appeal.

### Opinion.

The appeal presents no novel question. The opinion will simply announce the conclusions reached upon the propositions presented without extended discussion.

■ Upon examination of the testimony of Sarah J. and C. S. Tatum, we are of the opinion it raises an issue as to the fraud practiced upon them as alleged, and that this court would not be warranted in setting aside the findings made. The testimony of the Tatums is sharply contradicted by the witness Pope, who was present as the representative of the gin company at the time the renewal and deed of trust of April 23, 1931, were executed, and by the testimony of the notary who took the acknowledgments of the parties to the instruments. This conflict in the testimony was for the determination of the jury, and its decision is final.

■ The evidence shows that Sarah was illiterate, unable to read or write. C. S. Tatum could read and write, but from an examination of his testimony reproduced here in Q. and A. form it appears he was ignorant and not of high intelligence.

Based upon the fact that C. S. Tatum could read and write, was not prevented from reading the renewal and deed of trust by Pope or the notary, and acted as his mother's adviser in the execution of the instruments, it is urged a peremptory charge in favor of appellant should have been given.

The failure of C. S. Tatum to read the instruments and thereby inform himself of their contents did not, as a matter of law, bar the rights of himself and mother, in view of the false representations made as to the nature of such instruments, his reliance upon the same, and his evident ignorance. 10 Tex. Jur. title, "Contracts," § 57, and cases cited in note 12.

The various objections urged against the issues submitted are regarded as without merit. The same is true of the assertion that issues requested by appellant should have been given instead of those which were submitted.

■ The evidence presented no issue of a wrongful conversion, and for this reason issue No. 7 should not have been submitted. But the finding thereon was disregarded in the rendition of the judgment, and the submission of such issue was harmless.

■ The fraud upon which plaintiff's action is based is in no wise affected by the certificate, in statutory form, of the notary who took the acknowledgments of the parties (Vernon's Ann. Civ. St. art. 6606 et seq.). The evidence of such fraud is not an impeachment of the certificate.

The findings avoid the deed of trust of April 23, 1931, for which reason all propositions are overruled which assert appellant was entitled to foreclosure of that instrument.

Foreclosure of the deed of trust of December 7, 1926, was properly denied; such instrument being unenforceable for want of sufficient description of the land referred to in the same.

■ Appellant also complains of the refusal to render judgment against Sarah J. Tat-

um as community administrator for the amount of its debt. The notes were not given for a community debt. They were given for the individual debts of Sarah J. and C. S. Tatum incurred after the death of G. R. Tatum. They were not charges against the whole community estate. Speer's Marital Rights (3d Ed.) 689; Faris v. Simpson, 30 Tex. Civ. App. 103, 69 S. W. 1029.

In this connection appellant cites cases which hold that the qualified community administrator may convey or incumber, to secure his individual debt, the entire community estate in land, and that it is immaterial whether such administrator purports to execute the instrument in his representative capacity. These cases have no present application.

The conveyance or incumbrance of community land by such an administrator is an entirely different matter from the question here presented. We think the community administrator under some circumstances may bind the community estate for a debt incurred in carrying on an uncompleted community venture [Lindsey v. Hargett (Tex. Civ. App.) 56 S.W.(2d) 517], but we are of the further opinion that the purchase of the machinery in this case does not fall within such rule.

Affirmed.