George Wells ALLEN, Independent Executor of the Estate of C. W. Allen, Appellant,

v.

Mrs. D. A. BOATWRIGHT, Appellee.

No. 6195.

Court of Civil Appeals of Texas, Waco.

June 11, 1981.

Rehearing Denied July 9, 1981.

C. Thomas Wesner, Jr., Wesner, Coke & Boyd, Dallas, for appellant.

Eugene D. Stewart, Petry & Petry, P. C., Carrizo Springs, for appellee.

HALL, Justice.

This suit was brought by the lessee of two tracts of land against the lessor-owner for specific performance of an alleged option to purchase one tract, and to enforce the continuance of the lease on the other tract. The lessor defended and sought cancellation of the instruments upon which the suit is based upon the ground that execution of the instruments was obtained by fraud, and also upon failure of consideration. Trial to a jury resulted in a take-nothing judgment against the lessee. We affirm the judgment.

Defendant, Mrs. D. A. Boatwright, is the owner of two adjacent tracts of land, each containing 60 acres, located in La Salle County. We shall refer to the tracts as "Tract A" and "Tract B." On September 18, 1972, defendant and C. W. Allen executed an instrument denominated across

the top "LEASE AND OPTION TO PURCHASE" on Tract A, and an instrument denominated "LEASE OF FARM LAND WITH RIGHT OF FIRST REFUSAL TO PURCHASE" on Tract B. Both instruments were duly acknowledged by the parties before a notary public.

The lease agreement on Tract A provided in part as follows:

"In consideration of the sum of Ten Dollars and other good and valuable consideration, paid to the Optionor [Mrs. Boatwright], the receipt of which is hereby acknowledged, Optionor hereby grants to the Optionee [Allen], his successors or assigns, the exclusive right and option to buy [Tract A], together with any improvements thereon, for the sum of Two Hundred Dollars per acre, hereinafter called Purchase Price.

"Written notice exercising this option shall be given on or before October 1, 1983, and within sixty (60) days after the receipt thereof, Mrs. Boatwright, Optionor, shall deliver to C. W. Allen, Optionee, his heirs or assigns, a general warranty deed to said property in exchange for a valid check in payment of the Purchase Price in full. . . . All notices provided herein shall be deemed to have been duly given when deposited in the United States mail properly stamped and addressed [to the parties] at the following addresses:

Mrs. D. A. Boatwright    C. W. Allen  
P.O. Box 173    8632 Strathmore  
Dilley, Texas 78017    Dallas, Texas 75238

"IT IS FURTHER AGREED that for the additional consideration of Two Hundred ($200.00) Dollars per year paid by C. W. Allen . . . Mrs. D. A. Boatwright will lease the above described property to C. W. Allen for a period of ten (10) years with the payments being made on a regular yearly basis with the first payment being due on October 1, 1972, and a like payment being due on the 1st day of October of each year thereafter until 1983, said lease is subject to the option to purchase above described and will terminate at any time wherein C. W. Allen exercises his option to purchase said property from Mrs. D. A. Boatwright.

"IT IS FURTHER AGREED that C. W. Allen may sub-lease or assign his interest in said property without any written consent of Mrs. D. A. Boatwright. . . .

"IT IS FURTHER AGREED that both as to the option to purchase and the lease, that all mineral rights, save and except an undivided one-sixth (⅙) interest in said mineral rights shall remain the property of Mrs. D. A. Boatwright, a widow, her heirs and assigns."

The recitations, above, were typewritten, double spaced. They were followed by the parties' signatures, and then by their acknowledgements before the notary. The following addendum was typed, single spaced, immediately below the acknowledgements:

"In addition to the above signed agreement. It is further agreed that at the option of C. W. Allen that Mrs. D. A. Boatwright will release in 20 acre tracts all are (sic) part of the above described property upon the payment of $200.00 per acre to Mrs. D. A. Boatwright."

The parties again signed the instrument immediately below the addendum.

The lease agreement on Tract B set forth the following provisions:

"By this lease, . . . Mrs. D. A. Boatwright . . . demises and lets [Tract B] unto C. W. Allen . . . to occupy and to use for agricultural purposes and for any other purpose . . .

"The term of lease shall begin from the 1st day of October, 1972, to the 1st day of October, 1983, and from year to year thereafter unless written notice to terminate is given by either party to the other at least sixty (60) days prior to the beginning of the succeeding lease year. The provisions of the lease shall be binding on the heirs, administrators and assigns of both Lessor and Lessee in a like manner upon the original parties unless notified by mutual agreement.

"The Lessee agrees to pay to Lessor as annual cash rent on the above described

land the sum of Two Hundred ($200.00) Dollars per year payable on the 1st day of October, the first installment to be paid on October 1, 1972, and a like installment to be paid on the 1st day of October, on each year thereafter.

"It is further agreed as additional consideration for said lease Lessor, Mrs. D. A. Boatwright, a widow, gives unto Lessee, Mr. C. W. Allen, the right or option to purchase said property if she decides to sell said property during the life of this lease for the price equal to the highest bid of any legitimate offer from outside sources. If said option is so exercised, then Mr. C. W. Allen shall have the right to receive a title policy and survey from Mrs. D. A. Boatwright, her heirs or assigns at her expense."

Allen paid the annual rentals for the first year under both lease agreements by separate $200.00 checks on September 18, 1972, the day the agreements were executed. One check bore the notation on its face that it was for "Lease—option to purchase—60 Ac."; the other was marked for "Lease—60 Ac." Both checks were negotiated by defendant Mrs. Boatwright on September 19, 1972. Allen paid the annual rentals due on October 1, 1973, by a single check for $400.00 dated October 16, 1973. The check was marked for "1 yr. lease." It was negotiated by defendant on October 17, 1973. The rentals due on October 1, 1974, were paid by a single check for $400.00, dated September 17, 1974. The check bore the notations "74–75 Lease Option $200.00" and "74–75 Lease $200.00." The check was negotiated on September 19, 1974. The rentals due on October 1, 1975, were also paid by a single check, dated October 3, 1975. It was negotiated on October 5, 1975.

On October 14, 1976, Mrs. Boatwright had not received the annual rentals due on October 1, 1976. She took the lease agreements to her lawyer to discuss the matter with him. This visit resulted in her lawyer drafting a letter to Mr. Allen on October 14th providing in part as follows:

"As I understand the situation, there was a discussion of a lease and option to purchase and various instruments were delivered to Mrs. Boatwright which she examined and then when she went to sign the instruments other instruments were substituted and the two lease agreements she has delivered to me do not represent her understanding of the transaction. In addition, the so-called Option to Purchase Agreement has now been terminated by virtue of failure of consideration. Mrs. Boatwright advises me the $10.00 for said option was never paid nor was the other consideration which you promised to pay ever paid. This involves the drilling of a flowing well, rebuilding fences and making other improvements to the land. She feels she has given you more than four years to comply with the consideration and you have not done so and she now desires to advise you she considers said Option to Purchase Agreement terminated because of a complete failure of consideration. Mrs. Boatwright considers both leases terminated because the leases provide the annual rental is to be paid on October 1st of each year and the rental on neither of the 60 acres was paid on October 1, 1976. In fact, she has not received payment for these leases yet and this letter is being dictated on October 14, 1976. She advises me you told her son, Douglass, on October 12th, 1976, you were mailing her the lease payments. These payments should have been made on or before October 1, 1976, to keep these leases in force and since payment was not made you are hereby notified the leases are terminated and she has taken possession of the premises."

Later in the day (on October 14th) Mrs. Boatwright collected the mail from her post office box and found a bank money order for $400.00 from Mr. Allen payable to her. The money order had been issued by a bank at Terrell, Texas, on October 6, 1976. It bore the written notation on its face "For lease and leases option."

Mrs. Boatwright returned to her lawyer with the money order. He added the following postscript to the letter he had previously dictated to Mr. Allen:

"We are enclosing at the address given in the contract and also a copy to your address in Canton, which we did not know

about until Mrs. Boatwright went to the Post Office and received your letter on October 14th, the Money Order in the amount of $400.00 which you had sent to her. This Money Order was dated October 6, 1976, and was apparently issued at Terrell but it was not paid by October 1st nor was it received by Mrs. Boatwright until October 14th and she is returning the Money Order and does not desire to accept the same because it was sent late and did not comply with the contract and she alleges both contracts are terminated. The $400.00 Money Order is enclosed with this letter to the address you had in the contracts at Dallas, Texas. We are sending a copy to Canton so you will know it has been sent to your address in Dallas as well. With this letter to Canton we are enclosing a photocopy of the Money Order so you will know it is being returned."

The letter was mailed to Mr. Allen on October 14, 1976. On that same day, Mrs. Boatwright had her locks placed on the gates on both leased tracts.

On November 24, 1976, Mr. Allen's lawyer in Dallas, Texas, mailed the following letter to Mrs. Boatwright's lawyer:

"Reference is made to that certain Lease and Option to Purchase agreement dated September 18, 1972, and the option incorporated therein. Our client has advised us that he desires to exercise that option and will be ready, willing and able to close on or before December 15, 1976. Please advise me when you have the necessary instruments prepared to effect the closing and the time convenient for you and your client to close the transaction."

On December 13, 1976, Mr. Allen sent the following telegram to Mrs. Boatwright, from Dallas:

"Notwithstanding your prior correspondence I and my tenant continue possession of the property and I continue to graze my cattle on this property. Further I have ordered the locks changed. I do not intend to tolerate any further interference with me or my tenant's peaceful and quiet enjoyment of the property.

I stand ready, willing and able to pay the rent when you wish to accept it."

Mrs. Boatwright refused to comply with Mr. Allen's asserted option to purchase Tract A, and she refused to accept his tender of rent on either tract.

Mr. Allen filed this suit against Mrs. Boatwright in January, 1977. After pleading the lease agreements, he alleged his exercise of the option to purchase Tract A, Mrs. Boatwright's refusal to perform, her refusal to accept his tender of rent on both tracts, and that she had maliciously interfered with his possession and use of the tracts by locking the gates and demanding that his subtenant vacate the premises. He prayed for judgment directing Mrs. Boatwright to perform the option agreement on Tract A and to accept the rent due on Tract B, for a permanent injunction prohibiting Mrs. Boatwright from interfering with his enjoyment of both tracts, and for actual and exemplary damages based upon her alleged past interference with his possession and use of the properties. He also pleaded, alternatively, for $80,000.00 damages in lieu of specific performance of the alleged option to purchase.

Mrs. Boatwright answered with a general denial. She also specially denied that the leases and option to purchase pleaded by Mr. Allen were valid and enforceable for the following reasons:

"For the reason that the option and lease agreements signed by the Defendant were not the agreements which Defendant intended to sign, but the instruments actually signed by the defendant were fraudulently substituted for the originals by [Mr. Allen]. Defendant at no time intended to give more than an option to purchase if Defendant desired to sell said property.

"For the reason that [Mr. Allen] promised to pay certain consideration to the Defendant in consideration for her signature on the respective instruments, but [he] never paid the additional consideration and never intended to perform from the beginning."

Mrs. Boatwright also filed a counterclaim in which she pleaded for cancellation of the lease agreements upon the ground that her execution of the leases was induced by "the fraudulent representations of Counter-Defendant, C. W. Allen, that he would pay many additional considerations for the lease not stated on the face of said instruments, said considerations including, but not being limited to, the $10.00 consideration cited in [the lease agreement on Tract A], the placement of Mrs. Boatwright on Mr. Allen's payroll for approximately $17,000.00 per year, the conveyance of Mr. Allen to Mrs. Boatwright of a 3% interest in Mr. Allen's mines in Mexico, the promise of Mr. Allen to keep the fences in a good state of repair on the land in question, the promise of Mr. Allen that he would make a duck tank on the land in question, that he would drill a water well on the land in question, that he would give employment to Mrs. Boatwright's son, Douglass, and convey to Douglass Boatwright a 3% interest in Mr. Allen's Mexican mines, and that he would create a game preserve on the premises in question, none of which have been performed by Mr. Allen."

Mr. Allen answered Mrs. Boatwright's counterclaim with the allegation that the counterclaim "is barred by the statute of limitations, and if not, by laches since the documents were in Counter-Plaintiff's possession from the date of execution."

C. W. Allen died before the case was tried. George Wells Allen, in his capacity as independent executor of Mr. Allen's estate, was substituted as plaintiff and counter-defendant. George Wells Allen is C. W. Allen's son.

The case was tried to a jury on special issues. Prior to the submission of the case to the jury, the parties stipulated that it was undisputed that defendant, Mrs. Boatwright, had executed the lease agreements, that deceased, Mr. C. W. Allen had duly exercised the option to purchase Tract A, that at all pertinent times Mr. Allen and plaintiff, executor, were ready, able and willing to perform the option, and that Mr. Allen's failure to pay the rent due on October 1, 1976, until October 14th, would not support a forfeiture of the lease agree-

ments. It was also stipulated that defendant had abandoned her defense based upon failure of consideration, but that she continued to rely upon the allegations of fraud in her answer and counterclaim.

The jury made these findings in response to the six special issues submitted:

1. Mr. Allen "substituted the lease documents" prior to defendant's signing of the lease agreements on September 18, 1972.

2. The substitution was made by Mr. Allen "for the purpose of committing a fraud" on defendant.

3. Mr. Allen made false representations to defendant "regarding improvements to be made to the property covered by the leases [and regarding] additional monetary considerations to be given [defendant] and her son, Douglass Boatwright."

4. The representations were made "to induce [defendant] to sign the leases" and Mr. Allen "had no present intention of performing in the future on such representations."

5. The representations were believed and relied upon by defendant and "materially induced" her execution of the lease agreements.

6. Defendant would not have signed the lease agreements "but for" the representations.

Judgment was rendered on the verdict that plaintiff take nothing. Plaintiff brought this appeal on thirty-seven points of error.

■ Plaintiff asserts in alternative points that the evidence is legally and factually insufficient to support the jury's answers to special issues one and two. We overrule these contentions.

There is evidence of these facts: The two tracts in question are located in La Salle County, in south Texas. Defendant is a widow. She was 73 years of age at the time of trial in April, 1979. She is the sole owner of both tracts. She resides near the City of Dilley, not far from the property. Mr. Allen resided in the City of Dallas,

approximately 400 miles north of the property. Discussions between Mr. Allen and defendant and defendant's son Douglass Boatwright led to the agreement that defendant would lease the tracts to Mr. Allen for ten years. The consideration to be paid by Mr. Allen included not only the $400.00 annual rental, but also, among other things, his restoration of an existing water well on Tract B, his drilling of a new well on Tract A, and his rebuilding of the fences on both tracts. The parties also agreed that if defendant should decide to sell either tract, Mr. Allen would be given the right of "first refusal" to purchase. Nothing was said or agreed upon regarding an option to purchase either tract by Mr. Allen. Several days before September 18, 1972, the day of signing, Mr. Allen left with defendant a written lease for defendant's perusal. This was a single instrument on both tracts, and it included all of the items of consideration to be paid by Mr. Allen agreed upon by the parties (including the annual rent and the improvements to be made by him). It also provided for Mr. Allen's right of first refusal if defendant decided to sell, but it did not contain an option to purchase by Mr. Allen. The evening before the signing, Mr. Allen and plaintiff drove from Dallas to Dilley. They brought with them the lease agreements in question on Tract A and Tract B which were eventually signed by defendant. These agreements had been prepared by Mr. Allen's attorney in Dallas. The morning of the signing, Mr. Allen, plaintiff and defendant's son, Douglass, drove to defendant's house. Douglass went in the house, and once again discussed with defendant the lease agreement which had previously been left with defendant. Defendant and Douglass then went to the car and joined plaintiff and Mr. Allen. When they reached the car, Douglass handed the original lease agreement, which he had just discussed with defendant, to Mr. Allen, who placed it in his coat pocket. All four then drove to the bank in Dilley where defendant banked, to sign the agreement before a notary public. At the bank defendant was seated at the notary's desk. Defendant testified, "The Allens were standing close to me. I didn't read the papers at the bank; I had read them at the house. Mr. Allen would put the papers down in front of me. And the paper I looked at [at the house], there was just one place to sign, but he put two down there for me to sign. Well, I thought maybe one was for him and one was for me, and I signed two places. [The papers] were all pushed up where I couldn't see anything but the place to sign." Douglass testified, "Mr. Allen came out with these folded up contracts and laid them down for mother to sign. [When] I would try to see what was going on, I couldn't. For some reason, I never could get to see anything. George [plaintiff] started a conversation about the deer head on the wall, and that carried on until the signing was over." After the signing, defendant was handed copies of the signed instruments. She did not read them, but she folded them and placed them in her lock box at the bank.

Mr. Allen did not make the promised improvements on the leased tracts. On October 14, 1976, because defendant had not received the rent due on October 1st, and because Mr. Allen had not made the improvements, defendant called her lawyer for advice. Upon her lawyer's instructions she carried the lease agreements (still in their folded state) to his office. It was there that she learned for the first time, in her words, that "they had switched papers on me." When defendant executed the lease agreements in question, she thought she was signing the original instrument she had examined. She would not have signed the lease agreements if she had known their true content.

There is other evidence not detailed by us, including other distinctions between the original agreement and the signed instruments, which bear upon the jury's answers to special issues one and two. Following the tests set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1950), we hold the evidence is both legally and factually sufficient to support the jury's findings on those issues.

Defendant's proof included her testimony of transactions between her and Mr. Allen

surrounding their negotiations for the lease of the tracts, the true agreement made, and the execution of the instruments in question; and it also included the introduction of a part of Mr. Allen's deposition. Plaintiff objected to these portions of defendant's evidence on the grounds that they were in violation of the "dead man's statute," article 3716, Vernon's Tex.Civ.St., and that they also violated the parol evidence rule. The objections were overruled.

■ In actions by or against executors, article 3716 prohibits either party from testifying to any transactions with or statements by the testator "unless called to testify thereto by the opposite party." Defendant points to circumstances in the case which she asserts effected the waiver set forth in the statute, but we need not decide that question. Plaintiff has not assigned a point of error to the trial court's ruling on his objection under article 3716 to defendant's testimony. Therefore, any error in this ruling is not before us for consideration. Rule 418, Vernon's Tex.Rules Civ. Proc.; *State Farm Mutual Automobile Ins. Co. v. Cowley*, (Tex.1971) 468 S.W.2d 353, 354; *Contreras v. Contreras*, 590 S.W.2d 218, 222 (Tex.Civ.App.—Tyler 1979, no writ). Plaintiff does assign error to the overruling of his objection under article 3716 to the introduction of Mr. Allen's deposition. The gist of this deposition testimony was that Mr. Allen did not promise, prior to the execution of the lease agreements, to make any improvements to the leased tracts. It was material only to the issues on fraudulent representations by Allen, inquired about in special issues 3, 4, 5 and 6. Since the jury's findings that Allen fraudulently substituted the lease agreements (in response to special issues 1 and 2) independently support the judgment, the court's ruling on plaintiff's objection to the deposition testimony, even if determined to be erroneous, is harmless. Rule 434, Vernon's Tex.Rules Civ.Proc.

■ Plaintiff's objection that defendant's proof contravened the parol evidence rule was properly overruled. The parol evidence rule will not prevent proof of fraud which induced the execution of a contract. *Santos v. Mid-Continent Refrigerator Company*, 471 S.W.2d 568, 569 (Tex.1971); *Isenhower v. Bell*, 365 S.W.2d 354, 359 (Tex.1963); 2 Texas Practice, Law of Evidence (3rd ed. 1980), § 1661, p. 393.

■ Plaintiff's contentions that defendant's fraud defenses were barred by limitations or laches are overruled. Statutes of limitations and laches are directed against a cause of action; they may not be interposed as protection against matters, like fraud, set up strictly by way of defense. *Morriss-Buick Co. v. Davis*, 127 Tex. 41, 91 S.W.2d 313, 314 (1936); *Terry v. Baskin*, 44 S.W.2d 929, 932 (Tex.Comm.App.1932, holding approved); 37 Tex.Jur.2d 103, Limitations Of Actions § 18; 51 Am.Jur.2d 655, Limitations Of Actions, § 76.

■ The notary's certificate of acknowledgement on each of the leases in question was in statutory form, certifying that defendant had acknowledged that she executed the instrument "for the purposes and consideration therein expressed." Article 3723, Vernon's Tex.Civ.St., provides that "All declarations and protests made and acknowledgements taken by notaries public, and certified copies of their records and official papers, shall be received as evidence of the facts therein stated in any court of this State." Plaintiff contends in alternative points of error that the evidence is legally and factually insufficient "to overcome the presumption" of article 3723. We overrule these contentions.

Defendant did not question the proper execution of the lease agreements. That was admitted, but she alleged that their execution was obtained by Allen's fraud in substituting them at the time of signing in place of the true lease agreed upon by her and Allen. The certificate of the notary was not competent evidence to establish that defendant knew of the substitution or of the provisions of the substituted instruments. *Oar v. Davis*, 105 Tex. 479, 151 S.W. 794, 798 (1912). And evidence of the fraud alleged by defendant is not an impeachment of the certificate. *Continental Gin Co. v. Tatum*, 78 S.W.2d 698, 700 (Tex.Civ.App.—El Paso 1935, no writ).

Many of plaintiff's remaining points of error relate to the special issues and findings dealing with Allen's misrepresentations. For the reason we have stated, they are immaterial to the judgment. The others are without merit. All are overruled.

The judgment is affirmed.