**FRIO INVESTMENTS, INC., Appellant,**

v.

**4M–IRC/ROHDE, a Texas General Partnership, Appellee.**

**No. 04–85–00004–CV.**

Court of Appeals of Texas,
San Antonio.

Jan. 31, 1986.

Rehearing Denied March 11, 1986.

Royal D. Adams, S. Olsson Kahn, David D. Fowler, San Antonio, for appellant.

Ronald B. King, San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

Appellee, 4M–IRC/Rohde, a general partnership, brought this suit to enjoin foreclosure on land it had purchased from appellant Frio Investments, Inc., and for a declaratory judgment that it had paid Frio's real estate lien note in full. Frio appeals from a judgment in favor of 4M.

The pertinent facts are largely undisputed. 4M purchased a tract of land containing approximately 19 acres from Frio for $1,250,000.00. Located on the land at the time of the sale was a trailer park, a building used as a bar and convenience store, a laundromat, some apartments, and a three-bedroom house. Most of these structures were in a dilapidated and deteriorating condition. There was testimony that trash and junk were scattered about the tract and raw sewage was leaking behind the apartments. Despite these conditions, both the bar and laundromat were in operation, and there were numerous tenants in the trailer park and apartments.

The tract purchased by 4M was composed of two contiguous tracts that had been purchased by Frio at different times from different sellers. One tract contained approximately 16 acres and was subject to a note and deed of trust lien in favor of Ozark National Life Insurance Company. The smaller tract, which contained approximately 3 acres, was subject to a note secured by a first lien deed of trust in favor of the Estate of Marvin W. Williams, and a note secured by a second lien deed of trust in favor of Elmer E. Reiller.

The sale to 4M closed on August 16, 1982. At the closing the parties executed a warranty deed with vendor's lien, a real estate lien note in the original principal amount of $686,939.31, a deed of trust in favor of Frio securing the note, and an agreement for the discount of the note. Frio's deed of trust was inferior to the three prior liens. The note was to mature in five years, but the discount agreement provided that the note could be prepaid within one year for the sum of $523,158.56, plus interest. The discount agreement stipulated that the discount could be exercised "provided buyer is not in default in its Real Estate Lien Note or under its Deed of Trust." The note, the deed of trust and the warranty deed contained provisions allowing the holder to accelerate the payment of the note if 4M should default in the payment of the prior notes, "or in any of the covenants of the Deed of Trust securing the same." The superior deeds of trust contained standard covenants that all buildings and other improvements would be kept in good repair and that no waste would be permitted or committed. The Frio deed of trust, however, contained the following provision:

Notwithstanding the foregoing, it is expressly understood and agreed that Grantor shall be permitted to destroy, romove [sic] and/or replace any and all improvements situated on the aforesaid property, provided that such does not violate any covenants contained in the Prior Notes.

In March or April of 1983, 4M removed most improvements from the property in preparation for the construction of a new apartment complex. On April 14, 1983, the Williams Estate notified Reiller, Frio and 4M that the removal of the improvements constituted a default under the Williams Estate's deed of trust and that it was exercising its option to accelerate its note. On April 20, 1983, Frio wrote to 4M declaring a default under its deed of trust by virtue of the default under the Williams Estate's deed of trust. Frio accelerated its note and advised that if it was not paid in full by May 1, 1983, the deed of trust would be foreclosed.

On May 6, 1983, 4M tendered checks to each of the prior lienholders: $241,160.10 to Ozark, $42,815.21 to the Williams Estate, and $14,288.04 to Reiller. The checks were accepted and releases of liens were executed. On that same day a tender was made to Frio of $544,594.69, representing the discounted amount of the note. Frio rejected payment on the ground that 4M was not entitled to the discount due to the default and acceleration of the note. 4M then filed this suit to enjoin the foreclosure sale and to declare that the note was paid in full. It obtained a temporary restraining order which halted the sale. In order to permit litigation of the question without interferring with the use of the property, the parties entered into an agreement in which a letter of credit was posted by 4M for the amount of the discount, and a release of lien was executed by Frio. Frio accepted payment of the discounted amount subject to its right to claim the full amount of the note.

Trial was to the court. Its judgment declared that Frio's note was paid in full and that 4M was entitled to a release of its letter of credit. The judgment also awarded attorney's fees of $12,500.00 to 4M plus additional attorney's fees if the case was appealed. Findings of fact and conclusions of law were filed, and a statement of facts was also brought forward.

Frio raises twelve points of error. Its first eleven points challenge the court's findings and conclusions relating to the payment of its note. Frio argues that under the terms of its deed of trust, a default under any of the prior liens constitutes a default under its lien. It argues that the removal of the improvements constituted a default under the Williams Estate's lien and was therefore a default under Frio's lien. 4M contends that there was no default under the prior liens because the removal of the improvements did not reduce the value of the security below the amount of the debt.

▮ The general rule in Texas is that in an action by a lienholder for waste, damages are not recoverable if the value of the property after the alleged injury remains sufficient to secure the debt. *Carroll v. Edmondson*, 41 S.W.2d 64, 65 (Tex. Comm'n App.1931, judgm't adopted); *Payne v. Snyder*, 661 S.W.2d 134, 141 (Tex. App.1983, writ ref'd n.r.e.). It is also held that an allegation of waste is not a sufficient reason for foreclosure of a mortgage if the alleged waste did not unreasonably impair the mortgagee's security. *Lawton v. Lincoln*, 200 Okl. 182, 191 P.2d 926, 928 (1948); *Douglas v. Lowery*, 130 Ill.App.2d 910, 266 N.E.2d 107, 108 (1971); *Bart v. Streuli*, 5 Cal.2d 67, 52 P.2d 922, 922 (1935). The theory underlying this rule is that since the mortgagee does not own the property, he cannot bring an action for damage to the property. His only cause of action is for injury to his security. Therefore, if the injury to the property does not reduce its value below the amount required to secure the debt, the mortgagee has suffered no injury. *Carroll*, 41 S.W.2d at 65.

The trial court found that the structures existing on the land at the time of the sale and thereafter did not increase the value of the property above that of the raw land and actually detracted from the value of the land. We hold that there is evidence to support this finding. 4 R. McDONALD, TEXAS CIVIL PRACTICE § 16.10(b) (rev. 1984).

▮ The evidence established that the lienholder's security was not threatened since the value of the land subsequent to

the removal of the improvements was $1,000,000.00 to $1,500,000.00, while the balance of the Ozark, Williams Estate and Reiller liens at the time they were paid and released was under $300,000.00. Additionally, the balance of Frio's note should not be counted in this total since Frio consented to removal of the improvements. Obviously, the existence of the improvements was not a crucial determination to Frio in its evaluation of its security interest. Yet even if Frio's balance is counted as an outstanding lien, the evidence shows that the value of the land, even under the lowest estimate, still exceeded the total of the outstanding liens.

■ Frio argues, however, that it did not accelerate its note based on waste, rather the acceleration was based on the breach of the covenant in its deed of trust not to breach covenants contained in the superior liens. There could not have been a breach of the Williams Estate's deed of trust since removal of the improvements did not impair the value of its security.

Frio also argues that 4M breached covenants contained in all the deeds of trust requiring that the improvements be kept insured. Frio, over 4M's objection, introduced testimony that the improvements were not insured. 4M objected on the ground that Frio did not plead default based on breach of the covenants to insure. Frio sought a trial amendment on the issue of breach of the insurance covenants, but it was denied by the trial court. We agree that this issue was not before the court.

■ The only issue raised in 4M's petition was whether default had occurred under Frio's note and deed of trust by virtue of the Williams Estate's declaration of default. Frio's answer consisted of special denials on the issue of the removal of improvements and a general denial. Frio's position at trial was that its general denial gave it the right to prove any default in the deed of trust. We do not agree. The Williams Estate's acceleration notice was predicated on 4M's removal of the improvements. Frio's acceleration notice was predicated on the Williams Estate's notice.

Failure to insure was not mentioned. Neither side's pleadings addressed failure to insure, and that issue was not brought up until trial. Frio's general denial could place in controversy only the factual propositions asserted in 4M's pleadings, namely, whether removal of the improvements constituted a default. *Hays Consolidated Independent School District v. Valero Transmission Co.*, 645 S.W.2d 542, 545 (Tex.App.—Austin 1982, writ ref'd n.r.e.). A general denial

is strictly a negative plea, putting in issue only those allegations which the plaintiff is required to establish to recover. Hence, it does not open the way for evidence to support propositions which do not negative the plaintiff's claim, but go to support some independent reason why the plaintiff is barred from recovering, such as matters in avoidance or estoppel, or counterclaims or cross-claims.

2 R. McDONALD, TEXAS CIVIL PRACTICE § 7.23.2 (rev.1982). The issue of breach of the insurance covenants does not rebut the issue of breach of the covenant against waste, but seeks to establish an independent reason why 4M should not recover. As such, it is in the nature of an affirmative defense which must be specially pleaded. *France v. American Indemnity Co.*, 648 S.W.2d 283, 285 (Tex.1983). The issue of breach of the insurance covenants was not pleaded or tried by consent, and was not at issue in this case.

■ Further, the trial court's denial of leave to file a trial amendment was not raised as a point of error by Frio, and any complaint was therefore waived. TEX.R. CIV.P. 414(d); *Allen v. Boatwright*, 618 S.W.2d 856, 863 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.).

Frio's first eleven points of error are overruled.

■ Frio's final point urges that the trial court erred in awarding attorney's fees to 4M. It argues that the award was erroneous because it was based on the trial court's erroneous decision that no default existed. We have already held that the

trial court was correct in its determination regarding the alleged default. Attorney's fees are properly recoverable under the Texas Uniform Declaratory Judgments Act. Act of May 25, 1981, ch. 190, § 1, 1981 Tex.Gen.Laws 455, *repealed by* Act of September 1, 1985, ch. 959, § 9, Tex.Gen. Laws, 7281. We find no error in the award of attorney's fees. Frio's twelfth point of error is overruled.

The judgment of the trial court is affirmed.