In re JET EXPRESS, INC., Debtor,

**FAIRCHILD AIRCRAFT
INCORPORATED,**
Appellant,

v.

**JET EXPRESS, INC., Appellee.**

**No. 93 Civ. 1898 (RWS).**

United States District Court,
S.D. New York.

Sept. 16, 1993.

As Amended Sept. 20, 1993.

Klein & Bagileo (Robert P. Silverberg, Rosalind C. Cohen, Washington, DC, Condon & Forsyth, New York City, of counsel), for appellant.

Alagia, Day, Trautwein & Smith, Louisville, KY (Bruce D. Atherton, of counsel), for appellee.

## OPINION

SWEET, District Judge.

Appellant Fairchild Aircraft Incorporated ("Fairchild") appeals a final order of the Honorable Francis G. Conrad, Bankruptcy Judge, of the United States Bankruptcy Court for the Southern District of New York, refusing to terminate the rights and property interests of Debtors–Appellees Jet Express, Inc. ("Jet Express") in the Slot Lease Agreement ("Agreement") between the two parties. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a).

For the reasons set forth below, the order of the Bankruptcy Court is affirmed and remanded for proceedings consistent with this opinion.

### Parties

Jet Express, a Delaware Corporation, provides commuter air service for people and property in aircraft with 60 seats or fewer. As a commuter service, Jet Express operates between small regional airports and large domestic airports.

Fairchild manufactures aircraft, including aircraft used in commuter air carrier operations. Fairchild leases Jet Express the following: aircraft, spare parts, training, technical and support services. In the Agreement in controversy, Fairchild leases Jet Express slots authorizing Jet Express to operate into and out of Washington National Airport. The Agreement, a slot lease with an option to purchase, was forged on August 13, 1991 and will expire on August 12, 1996. (*See* Agreement, Ex. A)

### Prior Proceedings

On May 20, 1991, Jet Express filed a voluntary petition under Chapter 11 and continued its operations as Debtor-in-Possession pursuant to §§ 1107 and 1108 of the United States Bankruptcy Code. In August 1991, Jet Express filed an application for an Order authorizing it to enter into: (1) a Service Agreement with US Air, Inc.; (2) an Aircraft Lease Agreement with Fairchild; (3) a Spare Parts Agreement with Fairchild; (3) an Air Slots Lease Agreement with Fairchild; (5) a Premium Finance Agreement with Imperial Premium Finance Company; and (6) an Accounts Receivable Financing Agreement with Allstate Financial Corporation.

On December 15, 1992, Fairchild moved in the Bankruptcy Court for an order pursuant to 11 U.S.C. §§ 105, 362, and 503, *inter alia*, to enforce Fairchild's termination of the Agreement alleging that Jet Express failed to provide Fairchild monitoring reports pursuant to the Agreement.

Appellant's original motion requested that the Bankruptcy Court: (1) find Jet Express breached the Agreement by failing to provide monthly "slot reports"; (2) terminate Jet Express' rights to continue operating under the Agreement in leasing slots; (3) terminate Jet Express' option to purchase the slots; and (4) enter an order recognizing all the foregoing which could be filed with the Federal Aviation Administration ("FAA") thereby allowing Fairchild to transfer the slots from Jet Express to Atlantic Coast Airlines.

On January 19, 1993, the Bankruptcy Court took testimony relating to Fairchild's motion to terminate the Agreement. In a bench ruling, Judge Conrad found Fairchild's demand for termination of the Agreement was not in "good faith" since Fairchild had not required Jet Express to provide slot reports during the prior lease period. Accordingly, there was no "real violation" of the Agreement. Judge Conrad held that Fairchild's failure to demand the reports earlier implicated the doctrine of laches and, in effect, Fairchild had waived its rights to revoke the contract. (*See* Hearing Transcript, Appellant Ex. 17 at 162–66). The Court subsequently issued a written order on February 5, 1993, denying Fairchild's motion for an order enforcing Fairchild's termination of the Slot Lease Agreement pursuant to paragraph 6.

Fairchild filed a notice of appeal on February 18, 1993. Briefs were submitted through May 6, 1993 and oral argument was heard on June 16, 1992.

*Facts*

The air slots in controversy were sold to Fairchild by Jet Express Funding Corporation, Jet Express' largest secured creditor and sister corporation. Fairchild, in turn, agreed to lease back the slots to Jet Express. Due to the sale and lease back agreement, approximately $200,000 was infused into Jet Express assisting its continued operation. Paragraph 6 of the Agreement requires the filing of monitoring reports.[1] Paragraph 20 of the Agreement requires the application of Texas law to all disputes.

Both parties do not dispute issues of fact. Jet Express did not provide slot usage reports on a monthly basis to Fairchild as required by the Agreement. However, Jet Express utilized the slots, paid monthly rental and provided FAA required slot reports to Fairchild as well as the FAA since the Agreement's inception.[2]

In October, 1992, Fairchild entered into negotiations with British Aero Space and Atlantic Coast Airlines. On November 17, 1992, Fairchild and Atlantic Coast Airlines executed a Memorandum of Understanding transferring Fairchild's interest in the thirteen commuter slots, still under lease to Jet Express, to Atlantic Coast Airlines. The FAA refused to recognize the early termination of the lease in the absence of an appropriate court order from the United States Bankruptcy Court for the Southern District of New York. On December 9, 1992, Fairchild formally notified Jet Express that the Agreement was terminated based on the breach of paragraph 6—fail-

ing to provide monthly slot reports. These proceedings followed thereafter.

*Discussion*

### I. *Legal Standards*

■ Under Federal Rule of Bankruptcy Procedure 8013, this court reviews the Bankruptcy Court's findings of fact under the clearly erroneous standard and reviews its conclusions of law *de novo.* Fed. R.Bankr.P. 8013; *see In re Lomas Fin. Corp.,* 117 B.R. 64, 66 (S.D.N.Y.1990), *later proceedings* 932 F.2d 147 (2d Cir.1991); *In re Costa & Head Land Co.,* 68 B.R. 296, 298 (N.D.Ala.1986). Under the clearly erroneous standard, the court will reverse if " 'left with the definite and firm conviction that a mistake has been committed.' " *Manville Forest Products Corp. v. Manville Forest,* 896 F.2d 1384, 1388 (2d Cir. 1990) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)), *quoted in Lomas,* 117 B.R. at 66. Based on the record, the criterion for reversal has not been met.[3]

### II. *Duty of Good Faith Not Required*

■ Judge Conrad's bench holding mistakenly characterized the laws of Texas to require contracting parties, like Fairchild, to act in good faith. However, the Texas courts have declined to imply a duty of good faith in the context of ordinary contractual relationships. *See e.g. FDIC v. Myers* 955 F.2d 348 (5th Cir.1992) (review of Texas law confirms there is no duty of good faith and fair dealing) (*citing English v. Fischer,* 660 S.W.2d 521 (Tex.1983) and

---

1. Paragraph six states in full:

   Within five (5) days of the beginning of each month Lessee shall provide the Lessor a report on the use of each slot during the previous month, and a certification that it is in compliance with the "use or lose" provisions of Sec. 93.227 of the Federal Air Regulations. If during the month prior to the report Lessee has failed to use the slots at least 75% of the time, or if Lessee fails to provide the report as required, Lessee shall have the right to terminate, immediately and without notice, the lease with respect to such slots. The amount due under Par. 3 of this Agreement shall be reduced by 5% for each slot so terminated, only if and when Lessor has leases such

slot(s) to another air carrier or has otherwise disposed of the slot(s).

2. According to the Hearing transcript, Mr. Patrick Swift, Director of Planning, Schedules and Stations for Jet Express, stated he regularly telefaxed copies of Jet Express' FAA bi-monthly reports to Fairchild. (*See* Hearing Transcript, Def.Ex. 17 at 145–46).

3. Conclusions of the Bankruptcy Court based on testimony offered by a witness at a hearing before that court are considered factual findings, and therefore can be reversed only if clearly erroneous. *In re Lomas Fin. Corp.,* 117 B.R. 64, 67 n. 2 (S.D.N.Y.1990).

*FDIC v. Coleman,* 795 S.W.2d 706 (Tex. 1990)). As noted in *Fireman's Fund Ins. Co. v. Murchison,* 937 F.2d 204, 208–209 (5th Cir.1991), the Texas Courts refuse to apply the duty of good faith to a variety of contractual relationships, including those between: supplier-distributer, debtor-creditor, and mortgagor-mortgagee. *See Adolph Coors Co. v. Rodriguez* 780 S.W.2d 477, 481 (Tex.App. Corpus Christi 1989, *writ denied* Nov. 14, 1990 *reh'g of writ of error overruled* Jan. 9, 1991); *Victoria Bank & Trust Co. v. Brady,* 779 S.W.2d 893, 902 (Tex.App. Corpus Christi 1989, *writ granted*); *Lovell v. Western Nat. Life Ins. Co.,* 754 S.W.2d 298, 303 (Tex. App. Amarillo 1988, *writ denied*).

As a result, the Bankruptcy Judge erred to the extent its order was based upon its characterization of the law of Texas to require a contractual duty of good faith and fair dealing.

### III.   *Doctrine of Laches Improperly Applied*

■   Under Texas law, laches may be used as "shields," not as "swords." *E.D. Systems Corp. v. Southwestern Bell Tel. Co.,* 674 F.2d 453, 461 (5th Cir.1982) (citing *Allen v. Boatwright,* 618 S.W.2d 856, 863 (Tex.App.1981 *writ ref'd n.r.e.*)). Laches is a factual determination resting on "two elements: (1) unreasonable delay in bringing a claim although otherwise one has the legal or equitable right to do so and (2) a good faith change of position by another, to his detriment, because of this delay." *Clark v. Amoco Production Co.,* 794 F.2d 967, 971 (5th Cir.1986) (citing *City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403 (Tex.1964); *Culver v. Pickens,* 142 Tex. 87, 176 S.W.2d 167, 170 (1943)); *cf. Stone v. Williams,* 873 F.2d 620 (2d Cir.1989) (In applying doctrine of laches, it is the "reasonableness of the delay rather than number of years that elapse which is the focus of inquiry") (*vacated on other grounds* 891 F.2d 401 (2d Cir.1989)).

Judge Conrad made a finding as to the first element, unreasonable delay, in accordance with the Texas courts' interpretation of the doctrine of laches: "[t]here is certainly laches, waiting any number of months until they bring this to exercise their rights ..." (Hearing Transcript, Appellant Ex. 17 at 165). However, Judge Conrad, as best as can be told from the record, has not yet made a factual determination in satisfaction of the second element required by the Texas courts: whether Jet Express made a "good faith change" to its detriment based upon Fairchild's delay.

### IV.   *Immaterial Term of the Contract*

■   "An immaterial deviation from a contract is insufficient to justify a termination of the contract." *In re Braniff, Inc. v. GPA Group,* 118 B.R. 819, 841 (Bankr.M.D.Fla.1989) (*citing* Restatement (second) of contracts § 237 and § 241 (1982)). As a factual determination, it appears that Judge Conrad ruled that Jet Express' provision of the bi-monthly FAA reports were not a *material deviation* from the monthly reporting requirement described in paragraph 6 of the Agreement.[4] "There has been *no real* violation of this agreement and therefore relief from stay is denied." (Hearing Transcript, Appellant Ex. 17 at 165) (emphasis added). However, the record does not support a finding of error in Judge Conrad's determination that there was no material deviation from the terms of paragraph 6.

### V.   *Waiver is Correctly Applied*

Under Texas law, waiver is a voluntary, intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Edwin M. Jones Oil v. Pend Oreille Oil,* 794 S.W.2d 442, 447 (Tex.App.—Corpus Christi 1990); *See also Ford v. Culbertson,* 158 Tex. 124, 138–39, 308 S.W.2d. 855, 865 (1958). The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or con-

---

**4.**  It appears that Judge Conrad reasonably could have read the material purpose of paragraph 6 was to ensure compliance with the FAA report-ing requirements and any consequential FAA "use or lose" penalties in the absence thereof.

structive, of its existence; and (3) actual intent to relinquish the right, which can be inferred from conduct. *Missouri–Kansas–Texas R.R. v. Heritage Cablevision of Dallas, Inc.* 783 S.W.2d 273, 280 (Tex.App.—Dallas 1989, no writ).

*First Interstate Bank of Arizona, N.A. v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir.1991 *reh'g denied* ). In *First Interstate Bank*, the Fifth Circuit reiterated the District Court's treatment of waiver as a question of fact, not law, to be determined by the factfinder. *Id.*

■ The Agreement's waiver provision [5] at bar is not atypical. In a similar case, the United States Bankruptcy Court for the Middle District of Florida, held waiver precluded the owner/trustee of aircraft subleased to a Chapter 11 Debtor from terminating the lease agreements. *In re Braniff, Inc. v. GPA Group*, 118 B.R. 819 (Bankr.M.D.Fla.1989). The court stated: "[w]aiver is a voluntary relinquishment of a known right, and acts and conducts (sic) inconsistent with an intention to terminate a contract are sufficient to evidence a waiver." *Id.* at 841 (citations omitted).

Previously, this Court has held waiver clauses in contracts cannot be capriciously enforced.

> Under Section 18 [akin to section 14 in the Agreement], for the entire time between the date of non-occurrence and the time of compliance, the injured party can call the non-compiler into breach; patiently awaiting compliance the first week an action is overdue does not, by the terms of Section 18, waive the right to decide that enough is enough and claim that the contract is breached at a later time. However, it does not allow the other party to perform, and only after they have done so, claim as Silver Air does here, that missing the first date cancels the whole deal. *See Oleg Cassini, Inc. v. Couture Coordinates, Inc.* 297 F.Supp. 821, 831 (S.D.N.Y.1969).

*Silver Air v. Aeronautic Development Corp. Ltd.*, 656 F.Supp. 170, 177 (S.D.N.Y. 1987). Judge Conrad, duly considering the relevant facts, made a similar finding: "[i]n this particular case, there obviously is a clear waiver on the part of Fairchild waiting to see what's going to happen, and then when a better deal came along they woke up and said oh, we can sell these slots and I think the first witness Mr. Cipolla, used the words we can now get something tangible for something intangible." (Hearing Transcript, Appellant Ex. 17, at 164–65).

Here, the Bankruptcy Judge pointedly made a factual finding upon a review of witnesses' testimony and evidence submitted. Based on the facts presented, Judge Conrad found that Fairchild's conduct constituted waiver, notwithstanding the language of the contract, of its right to receive monthly slot reports.

Accordingly, the Bankruptcy Court committed neither an error in law nor in fact in determining Fairchild waived its right to enforce paragraph 6 of the Agreement.

### Conclusion

For the reasons set forth above, the findings of the Bankruptcy Court in support of its order denying Fairchild's motion are affirmed.

It is so ordered.

---

**5.** The waiver provision states in full:

14. *No Waiver*

No Waiver of any default under this Agreement, nor any failure or delay by either party to exercise any of its rights hereunder, shall be construed to prejudice its right to demand full and exact compliance with the terms of this Agreement for such or for any subsequent defaults, failures or delays.