In re LION CAPITAL GROUP, Debtor.

Stanley T. LESSER, Trustee for Hamilton Gregg Monetary Management Limited, Plaintiff,

v.

A–Z ASSOCIATES, Barnard Partnership, James L. Ferguson, Oran G. Kirkpatrick, Arthur B. Laffer, William E. Law, Thaddeus A. Dukes, Bruce D. Williams, Oliver J. Zandona, Robert E. Boyd, David C. Garfield, Robert C. Blanz, Tommaso Zanzotta, William V. Weithas, Vera Nabokob, Georgie W. Lewis, David H. Means, T.K. Flately, Brenda D. Neal, James P. Penders, J & Jr Partnership, Louis A. Lannuccillo, Donald C. Lowe, Herbert Kurz, FPMKR & L. Associates, Deborah Beinecke & Kinsella Trust November 24, 1964, Walter Beinecke III Trust November 24, 1964, Gen. Alexander M. Haig, Jr., Will G. Gaither, Jr., Robert S. Sutton, The Canaan National Bank, Harvard Resources, Inc., David S. Kaye, Peter L. Scott, Eugene A. Birnbaum, December Associates, John R. Hall, Robert T. McGowan, Theodore D. O'Hearn, George P. Giard, Jr., Harold J. Miller, Adolph J. Medica, and BGL Associates, Defendants.

Stanley T. LESSER, Trustee for Hamilton Gregg Asset Management Limited, Plaintiff,

v.

931 INVESTORS, James R. Anderson, John H. Chequer, Elsworth F. Baker, Robert G. Diforio, Walter F. Eells, James R. and Irene R. Farley, Dan M. Krausse, Donald C. Lowe, Harold M. Mayer, Harold J. Miller, Merlin D. Schulze, Robert K. Swandon, W. Paul Tippett, Jr., Martin Woolin, Annie Woolin, Oliver J. Sandona, Robert M. Worchester, Tom K. Smith, Jr., Hubert Faure, T. Mitchell Ford, Avery Corman, Donald L. McIntosh, William S. Anderson, Manuel Garcia, Charles E. Exley, Jr., Frank W. McAbee, Jr., Joseph A. Biernat, Joel B. Alvard, Harry L. Langdon, Morton M. Winston, John D.

Lyon, Rolf D. Bibow, Philip H. Geier, Jr., Louis A. Loiseau, Nat T. Harris, R.W. Bowman, G–H Partners, Jerre M. Freeman, and Gregg Group, Defendants.

Bankruptcy Nos. 84–B–10668 (HCB) to 84–B–10672 (HCB).
Adv. Nos. 84–5996A, 84–5997A.

United States Bankruptcy Court, S.D. New York.

Dec. 3, 1984.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Trustee; Bruce Margolius, New York City, of counsel.

· Stroock & Stroock & Lavan, New York City, for The Limited Partner defendants known as The Schedule A Defendants; Curtis C. Mechling and Mark A. Speiser, New York City, of counsel.

HOWARD C. BUSCHMAN, III, Bankruptcy Judge.

Stanley T. Lesser, as Chapter 11 Trustee for the Lion Capital Group, Lion Capital Associates, Blackburn Associates, Hamilton Gregg Monetary Management Ltd., and Hamilton Gregg Asset Management, Ltd. (collectively "debtors"), moves to dismiss the fraud-based counterclaims and defenses asserted by defendants pursuant to Federal Rule of Civil Procedure 9(b) and Bankruptcy Rule of Procedure 7009(b) and, counterclaims and defenses based on alleged violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO") and pursuant to F.R. C.P. 12(b)(6),[1] the thirty-fifth counterclaim asserted by defendant Canaan National Bank in *Lesser v. A–Z Associates* pursuant to F.R.C.P. 12(b)(6). The Trustee also requests that this Court stay certain of the defendants to these adversary proceedings from prosecuting two actions filed in the United States District Court for the Southern District of New York pending resolution of those actions.

## I

The defendants to these two adversary proceedings hold limited partnership interests, respectively, in debtors Blackburn Associates and Lion Capital Associates ("Lion Capital"), having executed agreements of limited partnership in 1981 (Lion Capital) or 1982 (Blackburn). As is common in this form of tax shelter investment, those agreements obligated each limited partner to make an initial capital contribution and provided that certain partners make additional contributions in amounts up to 300% of the initial contribution, thereby enabling those investors to take advantage of the benefits afforded by § 465 of the Internal Revenue Code. 26 U.S.C. § 465 (1983). The additional contributions, according to the agreements, were to be triggered by a call of the managing general partner of each partnership and were due within 30 days of receiving of notice of the call. Rollin H. Needham is a general partner of Blackburn. He has filed a personal bankruptcy petition with the United States Bankruptcy Court for the District of Connecticut. Debtors Hamilton Gregg Monetary Management Ltd. ("Gregg Monetary") and Hamilton Gregg Asset Management Ltd. ("Gregg Asset") serve as managing general partner for Blackburn and Lion Capital respectively.

The debtors, including Gregg Monetary and Gregg Asset, filed a petition seeking reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.) (the "Code") on May 2, 1984. Lesser was appointed operating trustee pursuant to § 1104(a) of the Code. As such, he, by registered mail dated May 18, 1984, demanded additional contributions from each

---

1. Rule 9(b) speaks of averments, not claims. As such it repeats the same term employed in Rule 8(c) F.R.C.P. which applies to all pleadings. That consistency indicates that Rule 9(b) is applicable to all pleadings, whether claims or defenses, alleging fraud or mistake. Consequently, we treat the motion as directed to those fraud based counterclaims which are also denominated defenses.

defendant limited partner. The contributions were not made. On June 24, 1984, the majority of the defendants began two parallel actions in the district court against Hamilton Gregg II, Rollin Needham and certain entities said to be affiliated with the debtors.[2] The Trustee sent each defendant a written notice of default on June 27, 1984, and began adversary proceedings on June 29, 1984, to compel defendants to pay.

In response to the Trustee's simple and straight forward complaint seeking to enforce a debt payable on demand, the defendants to these two actions denied nearly all material allegations and asserted massive sets of defenses and counterclaims.[3] These counterclaims proceed in all instances by alleging, in each case, that Gregg Asset or Gregg Monetary and various non-bankrupt affiliates made some 16 misrepresentations including the supposed absence of a need to register the offering under state or federal securities laws.

Whether the alleged misrepresentations were contained in a document or in oral statements is not indicated in the counterclaims. Nor is it disclosed whether some representations were made to some of the limited partners or whether all representations were received by all the partners. Similarly, it is not revealed who made the representations, it being merely stated that "Gregg Monetary and/or its Affiliates made and/or aided and abetted these misrepresentations and omissions of material fact." (A–Z Associates Counterclaims ¶ 29). And although the limited partners in their brief assert that the representations were made at the time they obtained their interests, their counterclaims are not so limited. The Schedule A defendants claim that the misrepresentations were made with intent to deceive or with reckless indifference in order to "induce defendants to purchase and retain limited partnership interests . . . ." *Ibid.*

On the basis of these allegations, it is claimed that Gregg Monetary and Gregg Asset are liable in common law fraud and for violating §§ 12 and 17(a) of the Securities Act of 1933 (15 U.S.C. §§ 77*l*(2) and 77q(a)), § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), Rule 10b–5 (17 C.F.R. § 240.10(b)(5)), §§ 4b, 4m and 4o of the Commodity Exchange Act (7 U.S.C. §§ 6b, 6m, 6o (1982)) and RICO. These allegations of fraud are repleaded in additional counterclaims asserting that the sale of unregistered partnership interests violated § 5 of the Securities Act of 1933 (15 U.S.C. § 77e (1975)) and applicable state blue sky laws governing the registration of securities offerings in the states of Alabama, Arizona, California, Colorado, Connecticut, Florida, Idaho, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, Utah and Virginia. These latter causes of action are brought only on behalf of those defendants, names not given, who were "offered or sold" partnership interests in the particular state.

Two defendants assert counterclaims peculiar to them. Canaan National Bank asserts that the transaction was ultra vires, and R. Wallace Bowman asserts that he was hospitalized at the time he purchased his partnership interest in Lion Capital and thus lacked contractual capacity. The

---

**2.** The district court actions are entitled *Blanz, et. al. v. Gregg, et. al.,* no. 84 Civ. 4449 (PKL) (S.D.N.Y.) and *Anderson, et. al. v. Gregg, et. al.,* no. 84 Civ. 4450 (PKL) (S.D.N.Y.).

**3.** Two groups of defendants answered the Trustee's complaint in each of the adversary proceedings. All four answers raise identical counterclaims and affirmative defenses and thus will be treated together for purposes of the motion. The parties refer to the defendants by two groups Schedule A defendants and Schedule B defendants, apparently because the defendants have hired two different law firms to represent them. The Schedule B defendants are Donald C. Lowe, Harvard Resources, Inc., David S. Kaye, Peter L. Scott. The Schedule B defendants in 931 Investors, et al, are DCL, Walter F. Eels, Hubert Faure, T. Mitchell Ford, Franie W. McAdee, Jr., Joseph A. Bernard, Joel B. Alvord, and Rolf D. Bibow. Day, Berry & Howard of Hartford, Connecticut, represent all Schedule B defendants. All others have been denominated by the parties as the Schedule A defendants. Stroock & Stroock & Lavan of New York, New York represent the Schedule A defendants.

Trustee asserts that the Canaan National Bank counterclaim fails to state a cause of action on its face. No motion is made with respect to Bowman's individual counterclaim.

The fraud-based allegations, remarkable for their lack of particularity, are all the more remarkable in their similarity to the complaints filed in the district court. That similarity, due no doubt to the retentive ability of word processing equipment, leads the Trustee to seek to stay the defendants from proceeding with their district court complaints pending resolution of the disputes here. In so urging, he asserts that the district court actions seriously threaten the Trustee's ability to prosecute this action and his ability to administer these estates and are "mere shams" brought to provide a basis for a motion before the district court to withdraw its reference of these proceedings to this Court and thereby delay and complicate them.

## II

■ In responding to the Trustee's motion to dismiss the counterclaims and to stay the district court actions, the limited partners assert that the matter should be deferred pending the district court's resolution of their motions to withdraw its reference of these adversary proceedings to this Court.

Such deference is not warranted here. These matters have been referred here pursuant to 28 U.S.C. § 157(a), enacted as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353 (July 10, 1984). In enacting that statute, Congress amended 28 U.S.C. § 1334 to provide the district courts with jurisdiction over all cases under the Bankruptcy Code and all civil proceedings arising in or related to a case under the Code. As provided in P.L. 98–353 § 115(a)(2), this amendment took immediate effect and jurisdiction over pending cases and proceedings was vested in the district court. Pursuant to 28 U.S.C. § 157(a) which was enacted by P.L. 98–353,

the United States District Court for the Southern District of New York, by order of July 10, 1984, referred all such cases and proceedings to the bankruptcy judges for this district. They are to be handled as core or related proceedings in a manner similar to that formerly decreed by Emergency Bankruptcy Rule I adopted by the district court for this district.

Jurisdiction thus lies in the district courts and upon referral subject to the exceptions provided in 28 U.S.C. § 157, is to be initially exercised by the bankruptcy judges. The district court's providing bankruptcy judges with power to enter judgments and orders for what 28 U.S.C. § 157(b) now refers to as core proceedings has been held by this circuit to pass constitutional muster. *Salomon v. Kaiser*, 722 F.2d 1974 (2d Cir.1983).[4] Referral to bankruptcy judges of non-core proceedings with power only to submit findings of fact and conclusions of law is similarly acceptable since those findings and conclusions are subject to *de novo* review by the district court. Cf. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 77, 102 S.Ct. 2858, 2874, 73 L.Ed.2d 598; *United States v. Radd at Z*, 447 U.S. 667, 671–77, 681–83, 100 S.Ct. 2406, 2410–13, 2415–16, 65 L.Ed.2d 424 (1980).

In these circumstances where Congress has acted to resolve the jurisdictional debate that followed Northern Pipeline, the mere pendency of a motion to withdraw the reference is no warrant for delay. Indeed, the pendency of that motion counsels in favor of addressing the Trustee's motion with respect to the pleadings. In ruling on a withdrawal motion, the district court should be presented with a case or proceeding as it is, not as it has been stylized through deficient pleadings. Motions addressed to the pleadings are part of the pre-trial structuring of a case for trial. The parties are entitled to efficient resolution of their matters whether they are to be tried here or in the district court. The duty of this court to handle all matters expedi-

---

**4.** No determination has been made whether this proceeding is a core proceeding. The parties have neither requested such a determination nor briefed the issue.

tiously is heightened in cases such as these where a trustee seeks to recover on a debt alleged to be owed to the estate. The size of this estate, dependent in part on the resolution of the trustee's claims, should be fixed so that a plan can be considered and the creditors' dividends can be calculated and paid.

If the withdrawal motion is granted, these proceedings will be further along than they would were this Court to defer. If the motion is denied, these proceedings will be equally advanced. There is no policy supporting delay in these circumstances.

### III

■ In opposing the Trustee's motion to dismiss their counterclaims and affirmative defenses based on fraud pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, the limited partners assert that those requirements are inapplicable to their causes of action concerning failure to comply with the registration requirements of federal securities laws and state blue sky laws and violation of the National Bank Act, but that they are met in all their remaining causes of action.

Totally unexplained, however, is the repleading of misrepresentation and reliance in the Answers and Counterclaims as part of the causes of action said to be based solely upon a failure to comply with registration requirements. For purposes of a motion addressed to the pleadings, it must be presumed that the limited partners mean exactly what they say: that these causes of action, however characterized, assert a claim based on fraudulent failure to register. Indeed, one of the misrepresentations alleged and incorporated, i.e., that registration was not required, pleads precisely that. These claims, as presently structured, are to be tested under Rule 9(b) of the Federal Rules of Civil Procedure which sets the applicable requirements for averments of fraud.

■ Moreover, the causes of action referring to state blue sky laws violate Rule 8(a) in their failure to identify the particular persons claiming protection of those laws. The concept of notice pleadings applicable under Rule 8(a), *Ross v. A.H. Robbins Co.*, 607 F.2d 545, 557 n. 20 (2d Cir. 1979); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974) *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975), is hardly satisfied by merely stating that the particular cause of action is brought by those Schedule A defendants who were "offered or sold" interest in Blackburn or Lion, and those Schedule B defendants who were sold such interests in the state whose law is asserted. The identification of these people is required so that the Trustee and the Court can know who is making the claim. *See Stromfeld v. Great Atlantic & Pacific Tea Co.*, 484 F.Supp. 1264, 1270 (S.D.N.Y.), aff'd 646 F.2d 563 (2d Cir.1980). Such an identification requirement is implicit in Rule 8(a). The Rule states that a counterclaim must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." (Emphasis added). Were those causes of action repleaded to omit the fraud theory they currently contain, they still must comply with Rule 8(a).

The general lack of specificity that permeates the counterclaims and defenses, as exemplified by the averments just discussed, is also the basis for the Trustee's assertion that they violate Rule 9(b). That rule, applicable to claims, counterclaims and defenses,[3] requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

■ That requirement of particularity is to be read in concert with Federal Rule of Civil Procedure 8(e), which states that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading are required." Read together, these two rules indicate that when alleging fraud, mere notice is to be replaced by specific factual details particular to the charges being made. Mere tracking of statutory language concerning liability for fraud will not suffice to impose upon a defendant the burden of discovery. *Ross,*

607 F.2d at 557. Also insufficient "is an 'everything but the kitchen sink' type of pleading which would give plaintiff's attorneys carte blanche in the area of liberal federal discovery." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114–15 (1982). "A complaint alleging fraud should ... serve to seek redress for a wrong, not to find one." *Segal v. Gordon*, 467 F.2d 602, 607–08 (2nd Cir.1972).[5]

At least since the Second Circuit decision in *Segal v. Gordon*, it has been clear that the 9(b) particularity requirement cannot be satisfied by "[m]ere conclusory allegations to the effect that defendant's conduct was fraudulent." *Id.* at 607 (citation omitted). The purposes of this rule are generally recognized as being to (1) inhibit the filing of a complaint as a pretext for initiating a fishing expedition, *Id.* at 607–08; (2) protect potential defendants from unwarranted damage to their reputations, *Id.* at 607; and (3) insure that allegations of fraud or mistake are sufficiently specific so that a defendant has notice of the exact misconduct charged. *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 245 (S.D.N.Y.1975). In the instant case, all three protections are undermined.

Each of the counterclaims and their related affirmative defenses asserted by the Schedule A defendants incorporates paragraphs 25–30 of their answers and counterclaims. Each of the counterclaims and related affirmative defenses asserted by the Schedule B defendants in both cases incorporates paragraphs 1–6 of their Eleventh Defense and First Counterclaim. We thus focus our attention on those twelve paragraphs. In all respects material here, the averments in these paragraphs by the Schedule A defendants and the Schedule B defendants are the same.

■ Paragraph 27 of the answers and counterclaims filed by the Schedule A defendants and the related pleadings filed by the Schedule B defendants each allege sixteen identical misrepresentations made by "Gregg Monetary [or Gregg Asset] and/or its Affiliates, and others acting on their behalf and under their control." Such averment does not satisfy the requirement that a defendant "be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 522 n. 7 (1977). A charge of fraud is insufficient where "[n]o statement by any specific individual is averred ... [because] it is not clear who told plaintiffs [which representation]." *Pocahontas Supreme Coal Co. v. Nat'l Mines Corp.*, 90 F.R.D. 67, 74 (1981). The Trustee is entitled to notice of which alleged misrepresentations were supposedly made by Gregg Monetary or Gregg Asset and which were made by others. "[T]he identity of the maker of the misrepresentation must be disclosed." Id. at 73.

■ Individualization may not be necessary where a counterclaim is asserted against a close-knit group of individuals if "the complaint sufficiently describes the fraudulent acts and provides the individuals with sufficient information to answer." *Pellman v. Cinerama, Inc.*, 503 F.Supp. 107, 111 (S.D.N.Y.1980). There, each individual had in some way contributed to a single allegedly false proxy statement upon which the plaintiff relied. Id. at 111. Not only would it be impossible to separate discrete threads of responsibility in such a single product, but such separation would

---

**5.** "[I]t is not an unreasonable burden to expect the [pleaders] to be able to identify the misstatements, omissions or fraud that caused them to engage in a particular security transaction." *Rich v. Touche Ross & Co.*, 68 F.R.D. at 247. Because of its peculiar nature, a complaint in fraud is singled out by the Federal Rules as requiring greater particularity than most other causes of action. A complaint in negligence, as indicated in the Appendix of Forms approved by Rule 84, requires at least the following factual information: the identity of the parties, the date and place of the occurrence, a description of plaintiff's and defendant's actions, the result of the occurrence, the specific harm suffered, and a demand for the damages incurred. Official Form 9, *Federal Rules*. If this degree of specificity is required under Rule 8 for garden-variety negligence, it is clear that Rule 9(b) particularity requires, at the least, pleading of these facts and more.

not contribute the defendants' ability to individually protect themselves: each defendant knows that he is being charged with the misrepresentations contained in the proxy. Similar reasoning led to the same result in *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902 (S.D.N.Y. 1983), where the court held that "individual identifications are unnecessary" where the allegations "involve misstatements or omissions in documents—annual reports, financial statements—that may be presumed to entail the collective actions of the directors, officers, and the accountant, in some cases." *Id.* at 911.

In the case at bar, however, there is no "collective action" alleged which involves a unified document. It must be assumed, therefore, that different defendants relied on assertions by different agents of the debtors or which were contained in a variety of documents or oral statements. Additionally, the list of agents contained in paragraph 25 is specifically not exhaustive and leaves plaintiff open to liability for statements of others not yet enumerated.

The notion of a small close-knit group, moreover, is inappropriate when, with the appointment of a Trustee, it cannot be said that the group has remained unified. Furthermore, a Trustee, having no personal knowledge, is especially in need of specific pleadings so that he can make the appropriate inquiry and respond.

■ For the same reasons, the averment of paragraph 29 of the Answers and Counterclaims filed by the Schedule A defendants (Schedule B, § 5) that "Gregg Monetary and/or its Affiliate made and/or aided and abetted" the alleged misrepresentations is insufficient. In addition, the standards of proof required to prove a primary violation of the securities laws and an aiding and abetting of that violation are not the same. *See Goldberg v. Meridor*, 81 F.R.D. 105, 111 (S.D.N.Y.1979). Indeed, in order to prove the latter, the former must first be proven. *Rolf v. Blyth, Eastman Dillon Co.*, 570 F.2d 38, 47–48 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). The charge that plaintiff "made and/or aided and abetted", therefore, lacks not only particularity but also logical sufficiency. According to that allegation, plaintiff may have aided and abetted its own primary violation. At the very least, defendants must clarify precisely what misconduct is alleged.

The sixteen misrepresentations also are to be tested by the particularity requirement of 9(b). "The 'circumstances' in Rule 9(b) refer 'to matters such as the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Robertson v. Nat'l Basketball Assoc.*, 67 F.R.D. 691, 697 (1975) (citation omitted); *see also* Rule 9(f). The Trustee is thus entitled to know the circumstances under which the alleged misrepresentations were made: were they made orally or in a particular writing. "[E]ither plaintiff knows of misleading statements made by defendants or he does not. If he does, then he must allege each and every statement with particularity. If he does not, then he may not use federal discovery procedures to flush statements out." *Goldman v. Belden*, 98 F.R.D. 733, 737–38 (W.D.N.Y.1983).

Here, this specificity is not provided. Even the time of the making of the representation is not stated. It is merely alleged that partnership interests were offered and sold in November and December of 1981 and in the same months of 1982. In addition to being deficient, this pleading is also imprecise in view of the claims by the Schedule A defendants that they were induced to hold their partnership interests. While that claim may not be cognizable under Rule 10b–5, *Blue Chip Stamps v. Manor Drug Stores, Inc.*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), to the extent that these defendants seek to assert it as part of their other fraud based claims, it seemingly contemplates that misrepresentations were made after they obtained their interests. The chronology of when such misrepresentations were made must be set forth.

■ But even particularity as to individuals, time, and place is not of itself sufficient to state a claim in fraud. "Simply listing a mass of documents [containing the alleged misrepresentations] does not satisfy Rule 9(b). Plaintiff must 'indicate how ... these sources ... provide the requisite factual support for the complaint's accusations ... [and must] link the sources to subsequent allegations in the pleading.'" *Crystal v. Foy*, 562 F.Supp. 422, 425–26 (S.D.N.Y.1983) (citation omitted). "At the very least, [defendants] must disclose those facts that have led [them] to believe [plaintiff's] publications are false." *Denny v. Barber*, 73 F.R.D. 6, 9 (S.D.N.Y.1976), *aff'd* 576 F.2d 465 (2d Cir.1978).

Here paragraph 28 of the Answers and Counterclaims of the Schedule A defendants and the corresponding paragraph of the pleading filed by the Schedule B defendants simply allege that the representations referred to in immediately preceding paragraph were not complied with by the debtor. For example, paragraph 27(a) avers that Gregg Monetary represented "that Blackburn would be operated in a conservative manner in order to minimize risk to the limited partners"; paragraph 28(a) alleges that plaintiff "did not minimize the limited partners' risk by operating Blackburn in a conservative manner." Such allegations are merely cyclical; they do not give plaintiff notice of the charge for which it must establish a defense. *See Denny v. Barber*, 576 F.2d 465, 469 (2d Cir.1978). In addition, it would appear that the allegation may be substantively deficient in that all that is alleged is a promise *in futuro*. Moreover, it is necessary to allege the way in which the purported fraud benefitted the perpetrator, *Robertson v. Nat'l Basketball Assoc.*, 67 F.R.D. at 697, and "the circumstances of [the injured party's] reliance on any misstatements, or the causal nexus between any omission, and the losses suffered." *Id.*, see also, *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. at 522.

In the "Schedule A Defendants' Memorandum of Law in Opposition to Motion to Dismiss Counterclaims and Stay District Court Litigation and In Support of Application to Stay Determination of this Motion and for Sanctions" (the "Memo in Opposition"), it is argued that the counterclaims asserted are stated sufficiently but even the discussion of cases contained therein highlights the utter insufficiency being denied. For example, the discussion of *Felton v. Walston & Co.*, 508 F.2d 577 (2d Cir.1974), is cited as "instructive ... because the court there drew the line between fraud claims that were so conclusory as to be dismissible and other claims sufficiently specific to meet the Rule 9(b) test" (Memo in Opposition, p. 17). The dismissible claims were those that merely alleged the sale of "worthless" companies by "deceptive" statements; the sufficient claims referred to three specific agreements and alleged that certain defendants "failed accurately to reflect the effect of those agreements on financial statements." Id. at 17–18. But the claims upheld in *Felton* also specified the "amounts involved in the alleged misrepresentation" and the court clearly noted that "the allegations here are not as specific as might be desired." 508 F.2d at 581. Moreover, the counterclaims asserted here are essentially no different from *Felton's* claims of worthlessness and deceptiveness. While the defendants here allege particular kinds of misrepresentation, they do not ground any of their allegations in specific facts relevant to their claim. Even were *Felton* to be read as providing the minimum standard for sufficiency, defendants have failed to meet that minimum.

To be sure this information may require some investigation, but this is hardly an argument against its necessity, particularly in light of the recent amendment to the fifth sentence of Federal Rule of Civil Procedure 11, which states that an attorney will only sign a pleading "after reasonable inquiry." As the commentary to the 1983 amendment states, "This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its vio-

lation," *Federal Rules,* 34 (West Publishing Co.) (1983).

For these reasons, the various counterclaims and affirmative defenses sounding in fraud must be dismissed for failure to comply with Rule 9(b). If the defendants so desire they may file amended answers and counterclaims. Because the necessities for sufficiency were clearly established before the originals were drafted, such amendments should be filed within twenty (20) days from of entry of an order implementing this decision. *See Natowitz v. Mehlman,* 542 F.Supp. 674 (S.D.N.Y.1982); *Rich v. Touche Ross & Co.,* 68 F.R.D. at 247.

## IV

■ The limited partners' RICO claims are further deficient in that they fail to satisfy the tests for pleading civil RICO liability established by the Second Circuit in *Sedima S.P.R.L. v. Imrex Co. Inc.,* 741 F.2d 482 (2d Cir.1984) and *Bankers Trust & Co. v. Rhoades,* 741 F.2d 511 (2d Cir. 1984).

In opposing dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants argue that the decision in Sedima, in so far as it requires allegation of a prior criminal conviction, should not be followed since it constitutes a new departure from established law of this circuit. They claim that fraudulent sales to many limited partners constitute a pattern. They further argue that the "patterns of racketeering activity requirement" of 18 U.S.C. § 1961(5) and the "enterprise" requirement of 1962(c) are met by the allegation that the debtor

and/or its Affiliates violated 18 U.S.C. § 1962(c), in that they conducted or participated, directly or indirectly, in the conduct of Blackburn [or Lion Capital] through a pattern of racketeering activity, by engaging in a scheme to obtain substantial funds for Blackburn [or Lion Capital] through acts of mail and wire fraud and through frauds in the sale of securities...

Answer and Counterclaim of Schedule A Defendants ¶ 54. They then assert that they were damaged thereby in the amount they invested.

These justifications for their pleadings, which were filed after the decisions in *Sedima* and *Bankers Trust,* are insufficient. The panel decision in *Sedima* in its requirement of a prior criminal conviction, may be controversial but it was not without precedent. In any event this court is bound to follow *Sedima.*

Moreover, this pleading fails to satisfy the requirement of racketeering injury required by both the panels in *Sedima* and *Bankers Trust* and by the district court. See *Bankers Trust & Co. v. Feldesman,* 566 F.Supp. 1235 (S.D.N.Y.1983); *aff'd sub. nom Bankers Trust v. Rhoades, supra.* In *Sedima,* the court ruled that standing to assert civil liability under 18 U.S.C. § 1962(c) requires damage through racketeering injury, 741 F.2d at 495, and defined such injury to be "different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to foster." 741 F.2d at 496. The *Bankers Trust* panel spelled out this requirement in terms of being injured by the pattern of activity as opposed to being injured by the predicate acts:

If a plaintiff's injury is that caused by the predicate acts themselves, he is injured regardless of whether there is a pattern; hence he cannot be said to be injured by the pattern, and the pattern cannot be said to be the but-for cause of the injury.

741 F.2d at 517. Applying that test, the *Bankers Trust* panel looked to the complaint to determine if the injury claimed was due to predicate or non-predicate acts. It was alleged that the plaintiff had loaned money to a company that filed an arrangement proceeding under Chapter XI of the former Bankruptcy Act. Finding that the plaintiff's loss in that transaction resulted from a predicate act of bankruptcy fraud,

the court affirmed the complaint's dismissal.

Here each limited partner alleges he was injured by the predicate act of a securities fraud perpetrated by Blackburn or Lion Capital. That same injury is claimed by them in their charges of securities fraud. Consequently, a predicate act, the injury asserted by each limited partner is not due to a pattern. That several limited partners claim to have been injured in the same way does not result in a pattern which is the "but-for" cause of the injury suffered by each of them. Thus, a charge of racketeering injury in this case cannot stand up under *Bankers Trust* or *Sedima* and the motion to dismiss for failure to state a cause of action must be granted.

### V

■ A different result is reached, however, with respect to the Trustee's motion to dismiss the individual counterclaim asserted by the Canaan National Bank of Canaan, Connecticut. There the Bank asserts that its purchase of limited partnership interests was *ultra vires* and seeks recission. In moving to dismiss, the Trustee relies on Connecticut's virtual abolition of the defense of *ultra vires*. *See City of New Britain v. Hancock*, 34 Conn.Sup. 14, 373 A.2d 859, 861 (1976), Conn.Gen.Stat. Ann. § 33–292 (1960). That position cannot be sustained.

Broadly construed, the affirmative defense and counterclaim alleges that under the National Bank Act and regulations issued by the Comptroller of the Currency, the Bank was not authorized to purchase the limited partnership interests in question. Whether the actions of a national bank are *ultra vires* or illegal under the National Bank Act, 12 U.S.C.A. § 21, *et seq.*, (1980), is a question to be determined under federal law. See *City of Yonkers v. Downey*, 309 U.S. 590, 60 S.Ct. 796, 84 L.Ed. 964, *reh. denied*, 310 U.S. 656, 60 S.Ct. 1071, 84 L.Ed. 1420 (1940), *Perth Amboy National Bank v. Brodsky*, 185 F.Supp. 217, *resettled*, 185 F.Supp. 219 (S.D.N.Y.1960). The law of Connecticut

does not apply. Accordingly, the motion to dismiss the defense must be denied.

Resolution of that branch of the motion seeking to dismiss the counterclaim would require consideration of the issue whether, assuming that the transaction was ultra vires or illegal, recission may be granted in these circumstances. The parties have failed to address that issue. Accordingly that branch of the trustee's motion must be denied pursuant to Rule 3(b) of the Civil Rules of the United States District Court for the Southern District of New York, but is done so without prejudice to any renewal on full papers and supporting briefs.

### VI

The parties have, however, fully addressed the Trustee's motion for an order staying defendants from prosecuting their district court actions and it is to that motion we now turn.

Under the former Bankruptcy Act, the power of a bankruptcy or reorganization court to stay proceedings in other courts was limited by its jurisdictional grant to those actions affecting property of the estate or affecting the reorganization process. *Callaway v. Benton*, 336 U.S. 132, 142, 69 S.Ct. 435, 441, 93 L.Ed. 553 (1949); *Thompson v. Texas Mexican Ry. Co.*, 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946); *Foust v. Munson Steamship Lines*, 299 U.S. 77, 84, 57 S.Ct. 90, 94, 81 L.Ed. 49 (1936); *Amadori Construction Co. Inc. v. Hoffenberg*, 534 F.2d 1050, 1092 (2d Cir. 1976); *Feldman v. Trustees of Beck Industries, Inc.*, 479 F.2d 410, 415 (2d Cir.), *cert. denied*, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973). As the Supreme Court tersely reasoned, in affirming the reversal of a district court's order stay the prosecution of a state court action, "Congress did not give the Bankruptcy Court exclusive jurisdiction over all controversies that in some way affect the debtor's estate... What it did give was exclusive jurisdiction of the debtor and its property wherever located." *Callaway v. Brown*, 336 U.S. at 142, 69 S.Ct. at 441–42.

There can be little doubt that the bankruptcy court, in its exercise of jurisdiction of referred cases under the Code and all adversary proceedings arising under, arising in, or related to such cases (28 U.S.C. § 157(a), 1334) has a far broader mandate than under the former Bankruptcy Act, a mandate only slightly less than that described in *Calloway v. Brown* as not given under the Act. Moreover, § 1481 of title 28 and the Code itself provides authority for the exercise of that mandate. They invest the Bankruptcy Court with the "powers of a court of law and equity", able, as set forth in § 105 of the Code, to issue orders "necessary or appropriate to carry the provisions of [the Code]." These provisions strongly imply that the former jurisdictional constraints on staying parties before it from proceeding elsewhere no longer mark the limitations of its power. *E.g. Otero Mills, Inc. v. Security Bank Trust Co.,* 25 B.R. 1018, 1020 (D.N.N.M. 1982); cf. *In re Clawson Medical Center,* 4 C.B.C.2d 73, 80 (Bankr.E.D.Mich.1981).

The limits of power, however, do not speak to the propriety of its exercise within those limits. Judicial discretion is not unlimited but is to be carefully honed in light of the facts of the case, applicable precedent and appropriate policy. *Fry v. Porter,* 1 Mod. [1607] 300, 307. The issuance of a stay by any court of equity requires a showing of serious, if not irreparable, injury and a tipping of the balance of the equities in favor of the party seeking the stay. *Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936); *Commodity Futures Trading Commission v. Chilcott Portfolio Mgt. Inc.,* 713 F.2d 1477, 1479 (10th Cir. 1983).

Here, the Trustee, apparently assuming that the defendants will file amended answers and counterclaims, attempts to satisfy that burden by claiming that (i) there is a need to preserve the assets of the defendants to the district court actions since he has or may have claims against those defendants, (ii) any judgment in the district court actions to which he is not a party may adversely affect his ability to realize on his cause of action against the limited partners, (iii) notions of judicial economy and conservation of estate assets require that the dispute be resolved in these proceedings and (iv) the stay is necessary to further administration of these estates.

A. *Preservation of Assets of Non-Debtors*

The first of these contentions cannot be sustained. The district court actions neither expressly seek relief against the debtor nor directly involve property of the estate. The defendants to those actions are either principals, parent companies or general partners of one or more of the debtors. But property of a debtor's principal or parent is not, without more, to be deemed to be property of the debtor so as to support a stay of litigation against the principal or parent. *See Trustees of Beck Industries,* 479 F.2d at 410 (the Bankruptcy Act does not authorize the Chapter X court to enjoin a suit against a solvent independent subsidiary of the debtor merely because its stock is held by the debtor in reorganization); *In re Hotel Martin Co. of Utica,* 94 F.2d 643 (2nd Cir.1938); *In re Adolf Gobel, Inc.,* 80 F.2d 849 (2nd Cir. 1936).

Without any evidence that the corporate defendants to the district court action (H.G. Securities Corp., H.G. Venture Capital Inc. and Gregg Group) are alter egos and "mere instrumentalities" of the debtors or are responsible for any insufficient capitalization of the debtors, there is no basis for piercing the corporate veil or otherwise asserting that an action against those parent entities amounts to an action involving property of the estate. *Trustees of Beck Industries,* 479 F.2d at 419. "The corporate veil cannot be disregarded merely because it would make for an efficient and economical administration of the debtor's estate." Ibid.

Similar reasoning applies to the limited partners' assertion of claims against Hamilton S. Gregg II and Rollin Needham, ap-

702

parently principals of the debtors. Their mere status as principals is no warrant for staying litigation against them. *E.g. Matter of Old Orchard Inv. Co.* 31 B.R. 599, 9 C.B.C.2d 139 (W.D.Mich.1983); *Cf. In Re Smith,* 14 B.R. 956, 8 B.C.D. 417, 5 C.B. C.2d 545 (D.Conn.1981). In those cases where such relief has been granted, it is almost uniformly shown that subjecting the principals to suit would affect a debtor-in-possession's ability to administer its estate. *E.g., Otero Mills Inc.,* 25 B.R. at 1021–22; *In re Ms. Kipps, Inc.,* 34 B.R. 91, 93 (Bankr.S.D.N.Y.1983). That the action sought to be stayed may result in the defendants to that action having a claim over against the debtor is of no moment. The mere incidence of such "indirect repercussions in matters involved in bankruptcy proceedings" is insufficient justification for the bankruptcy court to stay litigation against the debtor's principal. *In the Matter of Magnus Harmonica Corp.,* 233 F.2d 803, 804 (3rd Cir.1956). In this case, where an operating trustee has been appointed, any allegation that permitting suit against Gregg and Needham would deprive the the estate of their services would hardly seem tenable. As to preserving their assets, the court in *Old Orchard* observed:

> When a guarantor or surety is sued for the debts of their principal, however, different consequences follow. Once the guarantor or surety pays the creditor, the right to demand payment from the debtor only changes hands: it passes from the creditor to the guarantor or surety. *See, e.g.,* 74 Am.Jur.2d *Suretyship* §§ 168, 171 (1974); 38 Am.Jur.2d *Guaranty* § 127 (1968). Furthermore, the payment by the guarantor or surety is not from the debtor's assets; the net pool available thus is not depleted.

The differences between collection from a guarantor and a partner explain why suits to collect from partners should be treated differently by the bankruptcy courts. Collecting partnership debts from a partner, individually, does have repercussions on the debtor-partnership. That does not occur when a guarantor or surety satisfies the debts of a bankrupt partnership.

*Old Orchard,* 31 B.R. at 601.

Those repercussions lie in the nature of the general partner's general liability for partnership debts. To allow some creditors unrestricted access to his assets would adversely affect other creditors. *In re Elemar Associates,* 3 B.C.D. 958 (S.D.N.Y. 1977); *contra, In re Aboussie Bros. Constr. Co.,* 8 B.R. 302, 7 B.C.D. 309, 3 C.B.C.2d 684 (E.D.Mo.1981) Thus, Needham's status as a general partner in Blackburn would, but for his own bankruptcy and the consequent automatic stay of litigation against him, support the issuance of a stay. But so long as the automatic stay provided by § 362 of the Code is not modified in his personal bankruptcy, no unrestricted access is in the offing. Needham's being merely named in the two district court actions is not, on this record of inability to proceed against him, sufficient warrant for an additional stay to be issued by this Court.

## B. *Effect of the District Court Actions on the Estate*

The Trustee's assertions that the continuance of the district court actions will adversely affect the debtor does offer support for staying those actions. Here, as in *In re Johns-Manville Corp.,* 26 B.R. 420, 428 (Bankr.S.D.N.Y.1983), an "object" of those litigations is the debtors themselves and establishment of the defenses asserted here to the Trustee's claims that they are liable for the additional contribution required by the agreements of limited partnership. This purpose became abundantly clear at the hearing on this motion. There the Schedule A limited partners asserted that if successful in the district court actions they will claim upon rebutting any contention of lack of authority, that the debtors here be collaterally precluded from litigating the fraud and other issues raised in their counterclaims and defenses. They will base that claim on the said privity of Gregg Monetary and Gregg Asset with the defendants to those actions. (Tr. 21–22).

A concession by the defendants that they will seek to collaterally estop the Trustee from litigating issues resolved in the district court action supports the issuance of a stay pursuant to § 105 of the Code. *In re Johns-Manville Corp.*, 26 B.R. at 426–429; *In re Wickes Companies, Inc.*, no. LA–82–06633–35, 06655–65 (Aug. 5, 1982) (unreported). In *Manville* and *Wickes*, a variety of actions were brought against the employees, agents of the debtor and others related to the debtor. This court in *Manville* and the United States Bankruptcy Court for the Central District of California in *Wickes* ruled that the risk of collateral estoppel, the consequent drain on the debtor's resources through having to monitor or perhaps participate in other actions, and the risk that testimony by employees or agents might be subsequently employed against the debtor, would irreparably injure the estates and thus warranted the issuance of a stay.

While on this record the relationship of Hamilton S. Gregg II to the debtors is not clear, the Schedule A limited partners' actual assertion of potential collateral estoppel, as opposed to the speculation of such a claim in *Manville* and *Wickes*, sharpens the potential harm to the estate and makes more certain the drain on the estate through increased administrative expenses and a lower dividend return to all creditors of these estates, including the limited partners who have counterclaimed here. The estate is thereby irreparably injured.

Potentially adverse judgments are not the only harm which these estates will suffer if the district court litigations are continued. The Schedule A limited partners assert that the debtors were the beneficiaries of the fraud they claim, with Gregg, Needham and the other defendants to the district court actions having acted as agents or aiders and abettors. Most of the individual allegations of fraud before the district court consist of misrepresentations concerning Gregg Monetary and Gregg Asset. One can hardly imagine how the massive claims there asserted will be tried without both sides obtaining extensive pretrial discovery of these debtors. To not stay those actions would logically require this Court to permit such discovery to ensue.

Without a stay, the estate will be sharply impacted in a manner parallel to but harsher than those cases already cited which stayed actions against officers and directors. Here it is the Trustee who has possession of the corporate books, records and files of these debtors. He lacks the myriad of corporate employees who would assist a chief executive of a debtor-in-possession in the performance of his duties and in attending to the demands of extraneous litigation. Rather than address the administration of these estates, the Trustee will be put to the burden of responding to subpoenae of both sides which will presumably seek documents addressed to the numerous different representations alleged and testifying as their custodian. The delay promised by such a course will irreparably injure the estate and its creditors who have every right to expect efficient administration.

These concerns, however, are tempered by notions that plaintiffs and defendants alike should have their day in court whether to prosecute their claims or to vindicate themselves from charges made. In this, the courts are to exercise "judgment which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. at 254–55, 57 S.Ct. at 165–66, 81 L.Ed. 153, 158 (1936). In the drawing of that balance,

> the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Id.* at 255, 57 S.Ct. at 166. But here, those who oppose the stay are parties to both the actions they commenced in the district court and to the proceedings the Trustee commenced in this court. They will not be

compelled to stand aside while "the rule of law that will define [their] rights," *Landis,* 299 U.S. at 255, 57 S.Ct. at 166, is settled. Here, it is the party seeking the stay that is to stand aside under the threat of being collaterally estopped unless relief is granted.

### C. *Economy of Judicial Administration*

These concerns are not abated by the limited partners' motion for withdrawal of the reference and if successful, their contemplated motion to consolidate these actions with those in the district court. Those motions are to be decided by the district court. Whether the district court actions are shams designed to bootstrap the motion to withdraw the reference as the Trustee claims is also to be decided there. But even the limited partners concede that it would be impossible to consolidate these actions for trial. They have demanded a jury trial in the district court actions and have not made a similar demand here pursuant to Rule 9015 of the Rules of Bankruptcy Procedure.[6] The defendants' claims that judicial administration will be furthered by not staying the district court action is simply not tenable. Indeed, were the defendants truly interested in expediting these proceedings, they would not seek withdrawal of the reference of these proceedings to this Court where they could be tried in the near future and the calendar is not governed by the Speedy Trial Act, 18 U.S.C. § 3161 (1983) that impacts calendars in the district court.

---

**6.** The constitutionality of Rule 9015 cannot be seriously questioned on *Marathon* grounds given that it was promulgated by the Supreme Court and became effective on August 1, 1983, after the *Marathon* decision. *In re Paula Saker & Co.,* 37 B.R. 802, 11 B.C.D. 743 (Bankr.S.D.N.Y.1984).

**7.** Defendants also claim that in order to issue the stay requested here, the court must find probability of success in the debtors' reorganization. No court, however, has articulated such a requirement.

Moreover, defendants mistake the nature of the stay that is sought. This is neither a preliminary injunction nor a stay pending appeal

Thus, regardless of whether the district court grants the motion to withdraw the reference, these various concerns all counsel in favor of staying the defendants from proceeding with their district court actions to avoid irreparably injuring this estate and its administration. With the balance tipping almost exclusively in favor of the Trustee, his motion for such a stay pending the resolution of these adversary proceedings currently before this Court is to be granted.[7]

Settle Order on Notice.

where the probability of success on the merits or on the appeal is an issue. If, for example, one is not likely to succeed on the appeal, it makes little sense to issue a stay pending appeal. Here, however, the stay is sought to prevent injury to the estate from consequences of the district court action and interference with the estate's administration.

The defendants' assertion that the Trustee lacked grounds for his motion and brought it for ulterior purposes in violation of Rule 11 is denied. The Trustee's claim that the district court actions cannot proceed without Needham is for the district court, where those actions are pending, to decide.