In re LOMAS FINANCIAL CORPORATION, et al., Debtors.

LOMAS FINANCIAL CORPORATION, Appellee,

v.

The NORTHERN TRUST COMPANY, Ralph I. Miller, Esq., Jerry P. Jones, Esq., Thompson & Knight, Michael R. Feagley, Esq. and Mayer, Brown & Platt, Appellants.

Bankruptcy No. 90 Civ. 1355 (PKL). Adv. No. 89 6602A.

United States District Court, S.D. New York.

Aug. 6, 1990.

Mayer, Brown & Platt, Chicago, Ill. (Michael R. Feagley, of counsel) for appellants.

Davis Polk & Wardwell, New York City (Lowell Gordon Harriss, of counsel), for appellee.

## OPINION & ORDER

LEISURE, District Judge:

The Northern Trust Company ("Northern Trust") appeals from a January 11, 1990 order of the Honorable Burton R. Lifland, Chief Judge of the Bankruptcy Court of the Southern District of New York, enjoining Northern Trust from taking any further action in its suit against Robert Byerley ("Byerley") and Steven Hall ("Hall"). Byerley and Hall are Vice–President–Finance, Treasurer and Assistant Vice–President, respectively, of the Lomas Financial Corporation ("Lomas"), appellee in this action.

## BACKGROUND

On September 24, 1989 (the "Filing Date"), Lomas filed a petition for reorganization under Chapter 11 of the Bankruptcy Code (the "Code") and was continued in the management and possession of its business and properties as debtor-in-possession pursuant to §§ 1107 and 1108 of the Code.

Pursuant to § 362(a) of the Code, the filing of the petition on September 24, 1989, automatically stayed the commencement of any judicial proceeding against Lomas that could have been commenced before the Filing Date, and stayed recovery of claims against Lomas that arose before the Filing Date. On September 24, 1989, Chief Judge Lifland entered a restraining order which reiterated the effect of the automatic stay (the "Restraining Order").

On or about December 6, 1989, Northern Trust commenced an action entitled *The Northern Trust Company v. Robert Byerley and Steven Hall*, Case No. 89–3035G (the "Northern Trust Lawsuit"), in the United States District Court for the Northern District of Texas. Byerley has been Vice–President–Finance and Treasurer of Lomas since April 1988, and Hall has been Assistant Vice–President of Lomas since July 1988. The complaint filed in the Northern Trust Lawsuit (the "Complaint") has alleged the following: (i) Northern Trust and Lomas entered into a loan agreement on or about March 31, 1988, Complaint ¶ 4; (ii) Lomas' officers, Byerley and Hall, acting on behalf of Lomas, made negligent or fraudulent misrepresentations concerning Lomas' financial condition, Complaint ¶¶ 7–9, 11–14, 18; and finally, (iii) Northern Trust, relying upon those misrepresentations, advanced $20 million to Lomas, "which amount Lomas has not repaid and is unable to repay." Complaint ¶¶ 10, 15, 18. Northern Trust seeks to recover from Byerley and Hall the outstanding amount of their loan to Lomas. Complaint ¶¶ 6, 7. The Complaint does not allege that either Byerley or Hall had executed a personal guarantee of repayment by Lomas of any loan made to Lomas by Northern Trust.

By Order to Show Cause dated December 20, 1989, Lomas applied for an order pursuant to § 362 of the Code or, alternatively, pursuant to § 105 of the Code, applying and enforcing the automatic stay with respect to the Northern Trust Lawsuit. Pending a hearing on Lomas' request for preliminary and permanent injunctive relief, Chief Judge Lifland entered an order pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 7065, temporarily staying, restraining and enjoining Northern Trust from taking any action in the Northern Trust Lawsuit.

Lomas alleges that the Northern Trust Lawsuit constitutes a poorly disguised effort by Northern Trust to circumvent § 362 of the Code and Chief Judge Lifland's Restraining Order, in an effort to recover on a pre-petition claim against Lomas. Lomas also contends that the allegations ostensibly asserted against Byerley and Hall are identical to allegations which would have been asserted against Lomas had suits against Lomas not been prevented by the automatic stay. Further, Lomas contends that since Northern Trust seeks recovery of the $20 million borrowed by Lomas, that Lomas, not Byerley and Hall, is the true party at interest in the Northern Trust Lawsuit.

Northern Trust alleges that § 362 of the Code does not apply to the suit against Byerley and Hall, as that action is not against the debtor or its property. In addition, Northern Trust argues that the Northern Trust Lawsuit cannot be preliminarily enjoined pursuant to § 105 of the Code because Lomas has failed to prove that prosecution of that suit would cause immediate and irreparable harm to Lomas or its reorganization plan.

Chief Judge Lifland, in a Memorandum Opinion dated January 11, 1990, granted Lomas' request for a preliminary injunction based on Lomas' satisfying the standards set forth by the Second Circuit for the issuance of a preliminary injunction. *See In re Lomas*, Adversary Proceeding No. 89–6602A, slip op. at 13 (Bankr.S.D.N.Y. January 11, 1990). For the reasons set forth below, the Court affirms Chief Judge Lifland's Memorandum Opinion in its entirety.

## DISCUSSION

As a preliminary matter, the Court sets forth the standard of review for the district courts in their capacity as appellate courts. A district court's review of Bankruptcy Court orders is plenary. *See Manville Forest Products Corp–Gulf States Exploration Co. v. Manville Forest*, 896 F.2d 1384, 1388 (2d Cir.1990). The Court independently reviews the factual findings and the legal conclusions of the bankruptcy court, and "must accept the findings of fact unless they are clearly erroneous," but will reverse if " 'left with the definite and firm conviction that a mistake has been committed.' " *Manville Forest, supra*, 896 F.2d at 1388 (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The conclusions of law are reviewed *de novo. Manville Forest, supra*, 896 F.2d at 1388.

The standards set forth by the Second Circuit for the issuance of a preliminary injunction, pursuant to Fed.R.Civ.P. 65, made applicable herein pursuant to Bankruptcy Rule 7065, require that the party requesting the preliminary relief "'demonstrates both irreparable harm [1] and a likelihood of success going to the merits or a sufficiently serious question regarding the merits to make it a fair ground for litigation with the balance of hardship tipping decidedly in its favor." *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 972 (2d Cir.1989) (*citing Fireman's Fund Ins. Co. v. Leslie and Elliott Co., Inc.*, 867 F.2d 150 (2d Cir.1989) (per curiam)). In general, "the purpose of a preliminary injunction is to preserve the *status quo* ...." *Tucker Anthony, supra*, 888 F.2d at 972.

### 1. Irreparable Harm

Chief Judge Lifland properly found that Lomas' reorganization efforts would suffer irreparable harm were the Northern Trust Lawsuit permitted to continue. Byerley is the chairman of the task force assigned to developing a reorganization plan for Lomas, spends in excess of 50% of his time to this end, and in connection with Lomas' reorganization plan, is irreplaceable. *See In the Matter of Lomas*, Case No. 89 B 12471 (Transcript of Hearing on January 11, 1990) p. 22. Hall is a "key staff member" of this task force,

---

1. The force of the irreparable harm requirement must be considered in light of recent language by the Bankruptcy Court in this district. "Since injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown." *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y.1987).

who is "involved heavily in the reorganization effort." *Id.* at 24. Based on this and other similar testimony, Chief Judge Lifland found that were the Northern Trust Lawsuit permitted to continue, "key personnel would be distracted from participating in the reorganization process causing Lomas and its creditors both immediate and irreparable harm." *In re Lomas, supra,* slip op. at 10. Given the uncontested testimony demonstrating that Byerley and Hall play a substantial role in Lomas' reorganization efforts, the Court cannot find Chief Judge Lifland's conclusion to be clearly erroneous.[2] *See In re Johns–Manville Corp.,* 801 F.2d 60, 67 (2d Cir.1986) ("real jeopardy to reorganization prospects" is sufficient to show irreparable harm).

The Bankruptcy Court underscored its concerns regarding irreparable harm by accurately addressing the Second Circuit's position concerning the doctrine of collateral estoppel. By citing *In re Lion Capital Group,* 44 B.R. 690, 702–703 (Bankr.S. D.N.Y.1984),[3] Chief Judge Lifland concluded that "[i]t is not possible for the debtor [Lomas] to be a bystander to a suit which may have a $20 million issue preclusion effect against it in favor of a pre-petition creditor." *In re Lomas, supra,* slip op. at 11. The threat of collateral estoppel would force Byerley and Hall to participate in the Northern Trust Lawsuit. *See In re Lion, supra,* 44 B.R. at 702–703. This fact reaffirms Chief Judge Lifland's conclusion that the Northern Trust Lawsuit, if permitted to go forward, would serve as a distraction to key Lomas personnel, thus causing the corporation and its reorganization plan irreparable harm. This conclusion is particularly insightful when read in light of the suit's exhaustive discovery request. As Chief Judge Lifland asserted in his Memorandum Opinion, compliance with this extensive request would be a significant distraction to numerous Lomas personnel.[4] *See In re Lomas, supra,* slip op. at 11. For these reasons, the Court finds that the Northern Trust Lawsuit would cause Lomas and its reorganization plan irreparable harm.

Moreover, Lomas' participation in the Northern Trust Lawsuit would contravene the intended purpose of the automatic stay. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan or simply to be relieved of the financial pressures that drove him into bankruptcy." *In re Lomas, supra,* slip op. at 8 (*quoting* H.R.Rep. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep.No. 989, 95th Cong.2d Sess. 49 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5987, 5963, 6296–97). In light of this legislative history, the Court finds that Lomas' partic-

---

**2.** Conclusions of the Bankruptcy Court based on testimony offered by a witness at a hearing before that court are considered factual findings, and therefore can be reversed only if clearly erroneous. *See Truck Drivers Local 807 v. Carey Transportation Inc.,* 816 F.2d 82, 88 (2d Cir.1987).

**3.** Northern Trust argues that *In re Lion,* 44 B.R. 690 is not relevant because it is factually distinguishable from the instant case. The Court finds Northern Trust's argument to be without merit.

**4.** Although the Northern Trust Lawsuit names Byerley and Hall as defendants, compliance with its exhaustive discovery request would require substantial commitment from high level Lomas personnel. The following excerpts from that request illustrate the extensive burden placed on Lomas:

(i) All communications between Lomas and Northern Trust between January 1, 1988 to the present concerning the loan agreement, Lomas' net worth, Lomas financial condition, and the covenants and guarantees in all other of Lomas indebtedness outstanding at any time between January 1, 1988 and September 30th, 1989 (Document Request at 5, ¶ 1).

(ii) All communications between Lomas and any and all of its lenders other than Northern Trust since January 1, 1988 (Document Request at 5–6, ¶¶ 2, 6).

(iii) All documents "that reflect, refer to, or mention any events or facts that could cause [Lomas' net worth] to drop below $500 million at any time after January 1, 1989" (Document Request at 7, ¶ 12).

(iv) All documents "that refer to the possibility of bankruptcy or bankruptcy protection for Lomas at any time after January 1, 1988" (Document Request at 8, ¶ 13).

ipation in the Northern Trust Lawsuit would contravene the congressional intent of an automatic stay.

### 2. Likelihood of Success on the Merits

In addition to irreparable harm, Lomas must demonstrate "a likelihood of success going to the merits or a sufficiently serious question regarding the merits to make it a fair ground for litigation with the balance of hardship tipping decidedly in its favor." *Tucker Anthony, supra,* 888 F.2d at 972. In the instant case, the issue on the merits is whether Lomas' application for an order pursuant to § 362(a) of the Code, or, alternatively, pursuant to § 105 of the Code, enforcing the automatic stay with respect to the Northern Trust Lawsuit, should be granted.

The Court finds that the testimony offered at the proceeding before Chief Judge Lifland, *see In the Matter of Lomas, supra,* Case No. 89 B 12471 pp. 15–43, offers sufficient factual foundation for his findings to withstand scrutiny under the Second Circuit's "clearly erroneous" standard. *See Manville Forest, supra,* 896 F.2d at 1388; *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395, 396 (2d Cir.1987). Given the Bankruptcy Court's finding that the Northern Trust Lawsuit is merely a "transparent attempt by Northern Trust to end run the automatic stay," *see In re Lomas, supra,* slip op. at 9, the Court holds that, at the very least, there is "a sufficiently serious question regarding the merits to make it a fair ground for litigation with the balance of hardship tipping decidedly in its [Lomas'] favor." *Tucker Anthony, supra,* 888 F.2d at 972. Accordingly, Lomas has satisfied the second requirement, as well as the first, for the issuance of a preliminary injunction. *Id.* Thus, the Court affirms Chief Judge Lifland's issuance of a preliminary injunction. *Id.* Thus, the Court affirms Chief Judge Lifland's issuance of a preliminary injunction enjoining the Northern Trust lawsuit on these grounds. The Court affirms the preliminary injunctive relief on other grounds as well.

### 3. Fourth Circuit Precedent

■ The Court concurs with Chief Judge Lifland's finding that the instant case closely parallels the Fourth Circuit decision in *A.H. Robins Co. v. Piccinin,* 788 F.2d 994 (4th Cir.) *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The court in *Robins* held that " '[t]here are cases [under 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants,' " but the court qualified this assertion by adding that for such relief to be available under 362(a)(1) there must be "unusual circumstances." *A.H. Robins, supra,* 788 F.2d at 999 (*quoting Johns–Manville Sales Corp.,* 26 B.R. 405, 410 (S.D.N.Y.1983)). The *Robins* court defined "unusual circumstances" as "when there is such identity between the debtor and the third party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case." *A.H. Robins, supra,* 788 F.2d at 999.

In the instant case, it is undisputed that Lomas' corporate charter contains an indemnification clause, obligating Lomas to indemnify its officers for all legal claims arising out of acts performed in their capacity as Lomas officers. *See In re Lomas, supra,* slip op. at 12; *In the Matter of Lomas, supra,* p. 26. It is also undisputed that Byerley and Hall's alleged fraudulent misrepresentations were in fact made in their capacity as Lomas officers. *See* Appellant's Memorandum of Law at 4; *see also In re Lomas,* slip op. at 13. Accordingly, the Court finds the facts of the case at bar to satisfy the "unusual situation" standard set forth in the *Robins* opinion, and holds that the Bankruptcy Court appropriately stayed the action against a non-debtor third party pursuant to § 362(a)(1) of the Code.

## CONCLUSION

Chief Judge Lifland has interpreted and applied the relevant law correctly and none of his findings of fact are clearly erroneous. For this reason and those set forth above, Chief Judge Lifland's decision is affirmed in its entirety.

SO ORDERED.