NEW JERSEY CARPENTERS HEALTH FUND, on behalf of itself and all others similarly situated, Plaintiff,

v.

**ROYAL BANK OF SCOTLAND GROUP, PLC, et al., Defendants.**

08-CV-5310 (DAB)

United States District Court, S.D. New York.

Signed September 2, 2016

---

See also 709 F.3d 109.

Christopher Lometti, Joel Paul Laitman, Robert Dumas, Daniel Brett Rehns, Kenneth Mark Rehns, Michael Benjamin Eisenkraft, Richard A. Speirs, Cohen Milstein Sellers & Toll P.L.L.C., Frank Rocco Schirripa, Schoengold & Sporn, P.C., New York, NY, Stephen Douglas Bunch, Joshua Seth Devore, Matthew B. Kaplan, Steven Jeffrey Toll, Cohen Milstein Sellers & Toll PLLC, Washington, DC, for Plaintiff.

James Gaal Gamble, Thomas C. Rice, Christopher Jon Lucht, Alan Craig Turner, Jason Robert Meltzer, Christopher Gunn Lee, Magdey Abdallah, Mark Peter Curtis, William Thomas Russell, Jr., Simpson Thacher & Bartlett LLP, Steven J. Fink, Jacob Douglas Albertson, James Grohsgal, Orrick, Herrington & Sutcliffe LLP, New York, NY, William F. Alderman, Orrick, Herrington & Sutcliffe, San Francisco, CA, for Defendants.

## MEMORANDUM AND ORDER

DEBORAH A. BATTS, United States District Judge.

On July 20, 2016, Defendants NovaStar Mortgage, Inc. ("NMI") and NovaStar Mortgage Funding Corporation ("NMFC," and together with NMI, the "Debtor Defendants") initiated voluntary bankruptcy proceedings in the United States Bankruptcy Court for the District of Maryland, triggering the automatic stay provisions of the bankruptcy code. (ECF No. 224 (Suggestion of Bankruptcy); see 11 U.S.C. § 362(a)(1).) Defendants RBS Securities Inc., Deutsche Bank Securities Inc., and

Wells Fargo Securities, LLC (the "Underwriter Defendants") and Defendant NMFC Officers Scott F. Hartman, Gregory S. Metz, W. Lance Anderson and Mark Herpich (the "Individual Defendants") have taken the position—opposed vociferously by Plaintiff New Jersey Carpenters Health Fund ("Plaintiff")—that the automatic stay operates automatically and bars them from continuing with discovery in this Action.

For the reasons that follow, the Court concludes that the automatic stay applies only to NMI and NMFC.

## I. BACKGROUND

■ As noted above, this matter is automatically stayed as against the Debtor Defendants pursuant to Section 362(a) of the Bankruptcy Code. 11 U.S.C. § 362(a)(1). Debtor Defendants notified the Court of their bankruptcy filing on July 22, 2016. (ECF No. 224.) On July 25, 2016, bankruptcy counsel for the Debtor Defendants sent an email to the Parties in this action that, inter alia, set forth their position that "any continuation of the action or discovery undertaken in or in connection with any action in which [NMI or NMFC] is a defendant after the bankruptcy filing date would violate the automatic stay." (Pl.'s July 26 Ltr. Ex. B (Debtor Defs.' July 25 Email).) Approximately an hour after receiving Debtor Defendants' email, counsel for the Underwriter Defendants notified Plaintiff that, "in light of the bankruptcy

filings" and Debtor Defendants' position that continued discovery would violate the automatic stay, they would not be moving forward with two previously scheduled depositions. (Pl.'s July 26 Ltr. Ex. A (Underwriter Defs.' July 25 Email).) The letters cited herein followed in quick succession.

## II. DISCUSSION

### A. Legal Standards [1]

■ Section 362(a) of the Bankruptcy Code, by its terms, "operates as a stay" as to any "proceeding against the debtor." 11 U.S.C. § 362(a)(1). Thus, "[i]t is well-established that stays pursuant to § 362(a) are limited to debtors and do not encompass non-bankrupt co-defendants." Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir.1986). The Second Circuit has held that "the automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate." Queenie, Ltd. v. Nygard Int'l, 321 F.3d 282, 287 (2d Cir.2003)).

### B. Analysis

■ The Underwriter Defendants and the Debtor Defendants have argued that the automatic stay provision of the bankruptcy code applies here to halt Plaintiff's action as to the Underwriter Defendants and the Individual Defendants. In general, their arguments fall into two categories.[2]

---

1. The issue has not been raised by the Parties, but the Court notes at the outset that it has jurisdiction to consider whether the automatic stay applies automatically here. In re Baldwin–United Corp. Litig., 765 F.2d 343, 347 (2d Cir.1985) ("The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.").

2. Among their arguments in favor of applying the automatic stay, Underwriter Defendants and Debtor Defendants alike cite the "breathing spell" it provides to debtors in reorganization. (Underwriter Defs.' July 27 Ltr. 4; Debtor Defs.' July 28 Ltr. 1-2.) However, with the exception of discovery matters, which are limited in scope and can and will be managed by the Court to reduce or eliminate the burden on the Debtor Defendants, they fail to specify any aspect of this litigation that would impair

First, they argue that the continuation of this Action will have an "immediate adverse economic consequence" for Debtor Defendants' reorganization. (See Debtor Defs.' July 28 Ltr. 2-3.) Next, they argue that Plaintiff's claims against the Underwriter Defendants and the Debtor Defendants are "inextricably interwoven" such that a finding of liability here would necessarily implicate Debtor Defendants. (Underwriter Defs.' July 27 Ltr. 2-4; Debtor Defs.' July 28 Ltr. 2-3.)

The Record here does not support a finding that the continuation of this Action will have "immediate adverse economic consequence[s]" for the Debtor Defendants. Queenie, 321 F.3d at 287. In support of their argument, Underwriter Defendants and Debtor Defendants repeatedly cite the likelihood of future indemnification or contribution claims.[3] However, there is nothing in the record to suggest that any of the non-bankrupt Defendants would be entitled to absolute indemnity, only that they might elect to pursue indemnification or contribution in the event of an unfavorable result here. The mere possibility of a future indemnification claim will not support application of the automatic stay, and Defendants have not provided Second Circuit authority to the contrary.[4] DeSouza v. PlusFunds Group, Inc., No. 05–CV–5990, 2006 WL 2168478, at *2–3 (S.D.N.Y. Aug.

1, 2006); see also In re Lomas Fin. Corp., 117 B.R. 64 (S.D.N.Y.1990) (debtor corporation "obligat[ed]" to indemnify its officers); Robert Plan Corp. v. Liberty Mut. Ins. Co., No. 09–CV–1930, 2010 WL 1193151, at *4 (E.D.N.Y. Mar. 23, 2010) (debtor corporation "require[d]" to indemnify its officers).

Nor is the Court persuaded by speculation that a judgment here "would potentially have preclusive effect" on the Debtor Defendants. (Underwriter Defs.' July 27 Ltr. 3.) The Court is not persuaded that collateral estoppel—the fear that a future Court will conclude that Debtor Defendants are bound by an adjudication on the merits in this Court—is even arguably implicated here, given that Debtor Defendants' bankruptcy has deprived them of a full and fair opportunity to litigate the claims against them in this forum at this time. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 329, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ("In both the offensive and defensive use [of collateral estoppel], the party against whom estoppel is asserted has litigated and lost in an earlier action."). The Second Circuit, in any event, has cast a skeptical eye toward concerns about the creation of adverse precedent:

We have not located any decision applying the stay to a non-debtor solely be-

Debtor Defendants' focus on their reorganization. The Court's determination in this regard is without prejudice to the Bankruptcy Court's authority to extend the automatic stay should it determine on a factual record not developed here that doing so is warranted. See 11 U.S.C. § 105.

3. Debtor Defendants also assert that "the continued prosecution of claims against the individual defendants will result in claims against insurance policies that also provide coverage for the Debtors." (Debtor Defs.' July 28 Ltr. 3.) Debtor Defendants' vague and unsupported assertion is not a sufficient basis for the Court to conclude that insurance concerns

pose a threat of "immediate adverse economic consequence[s]." Queenie, 321 F.3d at 287.

4. See also In re SDNY 19 Mad Park, LLC, No. 14–11055, 2014 WL 4473873, at *2 (Bankr.S.D.N.Y. Sept. 11, 2014) ("After the bankruptcy of a securities issuer, the non-debtor defendants in securities actions routinely assert indemnification and contribution against the debtor-issuer, but as far as the Court is aware, there is no authority that these types of lawsuits are subject to the § 105 automatic stay merely on the basis that there might be indemnification rights against the debtor.").

cause of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision. If such apprehension could support application of the stay, there would be vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants.

Queenie, 321 F.3d at 288.

Finally, the argument that Plaintiff's claims against the Underwriter Defendants and the Debtor Defendants are "inextricably interwoven" likewise fails. (See Underwriter Defs.' July 27 Ltr. 2-3; Debtor Defs.' July 28 Ltr. (arguing that Plaintiff's remaining claims in this Action "constitute claims against the Debtors").) The cases surrounding this issue are by and large concerned with the corollary to such interrelatedness: the presence of "such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant." Queenie, 321 F.3d at 288 (quoting A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir.1986)). The cases on which Defendants rely therefore generally involve common facts and debtor and non-debtor defendants that are themselves significantly interwoven. E.g., Queenie, 321 F.3d at 288 (president and sole shareholder of debtor corporation). That is not the case here. The Underwriter Defendants and the NovaStar Defendants are separate entities, and Plaintiff's claims against the various Defendants are factually related but legally distinct. Accordingly, the concern that Debtor Defendants are the "real party defendant" is not present in this Action.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the automatic stay provision of the bankruptcy code does not operate to stay this action except as to the Debtor Defendants. By operation of the Scheduling Orders entered on July 9, 2015 (ECF No. 181; ECF No. 182), the end of discovery is adjourned to two weeks from the date of this Order.

SO ORDERED.